UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | CASE NO. 15-34287 (MI) |
| OPERATIONS, LLC | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| RICHARD SCHMIDT, LITIGATION TRUSTEE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 4:19-AP-03459 |
| | § | |
| BERNARD FUCHS, LEON MEYERS, MEADOWS | § | |
| CAPITAL, LLC, BERNARD W. EDELSTEIN, | § | |
| LEGACY INVESTMENT PARTNERS, LLC, | § | |
| DITMAS PARK CAPITAL, L.P. AND ROCKWELL | § | |
| FULTON CAPITAL, L.P., | § | |
| | § | |
| DEFENDANTS. | § | |

# TRUSTEE'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT MEADOWS CAPITAL, LLC (DKT. 58)

# TABLE OF CONTENTS

I.      Introduction and Summary of the Argument ....................................................... iii

II.     Background ............................................................................................................1

III.    Argument ...............................................................................................................2

        A.      The general 12(b)(6) legal standards. ...................................................2

        B.      The Trustee adequately pled the elements of his claims, which does not
                include knowledge of the Platinum fraud scheme. ..................................3

        C.      Punitive damages are potentially recoverable..........................................4

        D.      The Trustee's claims are timely................................................................5

                1.      The limitations statutes and key limitations dates. .....................5

                2.      The Trustee avoided the initial transfers in the default judgments
                        entered June 29, 2018 (PPBE) and September 20, 2018 (Platinum). ......... 6

                        a.      The avoidances in the Platinum Avoidance Action........................ 7

                        b.      The avoidances in the PPBE Avoidance Action............................ 8

                        c.      The default judgments were avoidances of the initial
                                transfers........................................................................................ 8

                3.      The Trustee was not required to either avoid in a prior case or
                        bring this subsequent transferee recovery lawsuit within the
                        Section 546(a) limitations period............................................... 11

                4.      Alternatively, if Meadows Capital is correct that no avoidance
                        occurred in the Platinum or PPBE Avoidance Actions, then the
                        Trustee's claims are timely because there has been no trigger for
                        limitations under Section 550(f). ............................................. 16

IV.     Conclusion ..........................................................................................................20

Certificate of Service ...................................................................................................22

887747.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AE Mktg. LLC v. Jenkins-Baldwin Corp.*,
   2013 WL 12226764 (N.D. Tex. Jan. 2, 2013) ..........................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................2

*Birts v. Mott*,
   2006 WL 1851386 (W.D. Tex. June 13, 2006) .........................................................................9

*Brown v. Kenron Aluminum & Glass Corp.*,
   477 F.2d 526 (8th Cir. 1973) ...................................................................................................10

*Club Retro, L.L.C. v. Hilton*,
   568 F.3d 181 (5th Cir. 2009) .....................................................................................................2

*Farasat v. RP Managing Partners, LLC*,
   2014 WL 125886306 (N.D. Tex. Nov. 13, 2014)......................................................................8

*Graham v. Coconut LLC*,
   2017 WL 2600318 (E.D. Tex. June 15, 2017).......................................................................8, 9

*Guffy v. Brown (In re Brown Med. Ctr., Inc.)*,
   2017 WL 5067603 (S.D. Tex. Sept. 11 2017) ........................................................................15

*Hamilton v. Bus. Partners, Inc.*,
   2000 WL 108849 (E.D. La. Jan. 28, 2000)...............................................................................9

*Holmberg v. Armbrecht*,
   327 U.S. 392 (1946)............................................................................................................17, 18

*In re AVI, Inc.*,
   389 B.R. 721 (B.A.P. 9th Cir. 2008).............................................................................7, 14, 15

*In re Bernard L. Madoff, Inv. Sec., LLC*,
   548 B.R. 13 (Bankr. S.D.N.Y. 2016)........................................................................................3

*In re ContinuityX, Inc.*,
   582 B.R. 124 (Bankr. S.D.N.Y. 2018) (Vyskocil, J.) .............................................................14

*In re Data Lease Fin. Corp.*,
   176 B.R. 285 (S.D. Fla. 1994) ..................................................................................................6

887747.1

*In re Galaz*,
    850 F.3d 800 (5th Cir. 2017) ...................................................................................5

*In re Grove Peacock Plaza, Ltd.*,
    142 B.R. 506 (Bankr. S.D. Fla. 1992) ...................................................................17

*In re Heritage Org., LLC*,
    2011 WL 1793327 (Bankr. N.D. Tex. May 11, 2011)...........................................6

*In re IFS Fin. Corp.*,
    2010 WL 4614293 (Bankr. S.D. Tex. Nov. 2, 2010)............................................17

*In re Int'l Admin. Servs., Inc.*,
    408 F.3d 689 (11th Cir. 2005) .........................................................................18, 19

*In re Juliet Homes, LP*,
    2010 WL 5256806 (Bankr. S.D. Tex. Dec. 16, 2010) ..........................................18

*In re MacGregor Sporting Goods, Inc.*,
    199 B.R. 502 (Bankr. D.N.J. 1995) .......................................................................20

*In re Nat'l Serv. Indus., Inc.*,
    2015 WL 3827003 (Bankr. D. Del. June 19, 2015)...............................................20

*In re Olsen*,
    36 F.3d 71 (9th Cir. 1994) .....................................................................................18

*In re Pitt Penn Holding Co.*,
    484 B.R. 25 (Bankr. D. Del. 2012) ........................................................................20

*In re Ryan*,
    472 B.R. 714 (E.D. Va. 2012)................................................................................11

*In re Serrato*,
    233 B.R. 833 (N.D. Cal. 1999) ................................................................................6

*In re Sia*,
    349 B.R. 640 (Bankr. D. Haw. 2006) ....................................................................20

*In re Southmark Corp.*,
    239 F.3d 365 (5th Cir. 2000) ...............................................................................1, 3

*In re Steele's Market, Inc.*,
    304 B.R. 447 (Bankr. D. Colo. 2004) ....................................................................11

*In re Swanson*,
    13 B.R. 851 (Bankr. D. Idaho 1981).......................................................................15

887747.1

*In re Tex. Rangers Baseball Partners*,
498 B.R. 679 (Bankr. N.D. Tex. 2013)...................................................................2

*In re Vallecito Gas, LLC*,
461 B.R. 358 (Bankr. N.D. Tex. 2011)...................................................................17

*J&J Sports Prods., Inc. v. Circle R&R Inc.*,
2019 WL 937348 (S.D. Tex. Feb. 11, 2019) ..........................................................8

*Lormand v. U.S. Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ..................................................................................2

*Luhr Bros., Inc. v. Crystal Shipowning, PTE*,
325 F.3d 681 (5th Cir. 2003) ................................................................................10

*Lumbermens Mut. Cas. Co. v. Basswood Group, LP*,
2005 WL 3447737 (W.D. Tex. Dec. 7, 2005) .........................................................9

*Matter of Coutee*,
984 F.2d 138 (5th Cir. 1993) ..................................................................................1

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*,
515 F.2d 1200 (5th Cir. 1975) ................................................................................8

*Pace v. DiGuglielmo*,
544 U.S. 408 (2005)...............................................................................................18

*Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities
LLC*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012).......................................................13, 14, 15

*Transfirst Holdings, Inc. v. Magliarditi*,
574 F. App'x 345 (5th Cir. 2014) .........................................................................10

*United States v. Shipco Gen., Inc.*,
814 F.2d 1011 (5th Cir. 1987) ................................................................................8

*Williams v. McKesson Corp. (In re Quality Infusion Care, Inc.)*,
2013 WL 6189948 (Bankr. S.D. Tex. Nov. 25, 2013)...........................................12

**Statutes**

11 U.S.C. § 544 ........................................................................................................5

11 U.S.C. § 545 ........................................................................................................5

11 U.S.C. § 546 ......................................................................................................18

11 U.S.C. § 546(a) ........................................................................................... *passim*

11 U.S.C. § 547 .......................................................................................................5, 6

11 U.S.C. § 548 ...................................................................................................5, 6, 13

11 U.S.C. § 549 .....................................................................................................15, 18

11 U.S.C. § 550 ..................................................................................................... *passim*

11 U.S.C. § 550(a) ..................................................................................11, 12, 13, 14

11 U.S.C. § 550(b) ....................................................................................................4

11 U.S.C. § 550(b)(1) ...............................................................................................3

11 U.S.C. § 550(f) .................................................................................................. *passim*

11 U.S.C. § 550(f)(2) ..............................................................................................16

Tex. Bus & Com. Code § 24.001, *et. seq.* ...................................................1, 4, 5, 7

Tex. Bus. & Com. Code § 24.008(a)(3)(c) ................................................................5

Tex. Bus. & Com. Code § 24.009(c)(1) .....................................................................5

**Other Authorities**

Fed. R. Civ. P. 8(a) .....................................................................................................2

Fed. R. Civ. P. 12(b)(6) ........................................................................................2, 20

Fed. R. Civ. P. 52(a) .................................................................................................10

Fed. R. Civ. P. 52(a)(1) .............................................................................................10

887747.1

## I.      Introduction and Summary of the Argument

The Trustee's claims against Meadows Capital LLC are for subsequent transferee liability under Bankruptcy Code § 550 and the Texas Uniform Fraudulent Transfer Act ("TUFTA"). To properly plead a subsequent transferee claim, the Trustee only must plead that (1) the initial transfer has been avoided or is avoidable, and (2) the subsequent transferee must have been a recipient of the initially transferred funds. Here, the Trustee has done so.

Meadows Capital, adopting positions asserted by other defendants, argues (1) that the Complaint fails to establish a plausible claim; (2) that the Trustee is not entitled to punitive damages; and (3) that the Complaint is untimely. Each of these arguments fails.

## II.      Background

In the summer of 2014, Platinum and its principals looted nearly $98 million from Black Elk.  To the extent that Black Elk was not already insolvent, this theft left Black Elk insolvent. Platinum and its principals sent the $98 million through the Platinum entities to a small group of its long-term investors with significant relationships to Platinum and its principals, including Mark Nordlicht's family, Murray Huberfeld's family foundation, Daniel Small and David Levy. Meadows Capital improperly received $508,329.36 of Black Elk's money.[1] The Platinum entities

---

[1] In the preliminary statement to its motion, Meadows Capital suggests that it is not a proper subsequent transferee because it never took possession of the money. *See* Mot., at 2. But when the Fifth Circuit examines whether an individual is a transferee for purposes of the bankruptcy statute, the court considers the dominion or control test. *See, e.g.*, *In re Southmark Corp.*, 239 F.3d 365, at *4 (5th Cir. 2000) ("However, in determining whether a person or entity is a subsequent transferee under bankruptcy law, we agree with the district court that the alleged 'transferee' must have had dominion and control over the funds in question."). *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993). "[A]n entity does not have dominion over the money until it is, in essence, 'free to invest the whole [amount] in lottery tickets or uranium stocks' if it wishes." *Coutee*, 984 F.2d at 141 (quoting *Bonded Financial Services, Inc. v. European American Bank*, 838 F,3d 890, 894 (7th Cir. 1980)). In the Complaint, the Trustee alleges that Meadows capital directed that $500,000 (which consisted of Meadows Capital's proceeds from the PPBE redemption) be invested into another Platinum fund. Compl., ¶ 83. Meadows Capital also could have directed that the money be sent to its account, or elsewhere. Meadows Capital therefore had dominion and control. Accordingly, the Trustee properly alleged that Meadows Capital had dominion and control over that money, and therefore is a subsequent transferee.

and PPBE Investors did not take for value, in good faith or with lack of knowledge of voidability. In the ensuing and inevitable Black Elk bankruptcy, many Black Elk creditors, employees, and contractors were left holding the empty bag as Black Elk had no cash left to pay them.

### III.     Argument

**A.     The general 12(b)(6) legal standards.**

In general, when deciding a Rule 12(b)(6) motion, the Court "must accept all well-pleaded facts as true, draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *see also In re Tex. Rangers Baseball Partners*, 498 B.R. 679, 711 (Bankr. N.D. Tex. 2013) ("In evaluating a Motion to Dismiss under Rule 12(b)(6), which is made applicable in this proceeding pursuant to Bankruptcy Rule 7012, a complaint is to be charitably construed, with all well pleaded factual allegations being accepted as true and with any reasonable inferences from those facts being drawn in favor of the non-moving party.").

Rule 8(a) simply requires the Trustee to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the complaint must be more than conclusory labels and a recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint here is replete with facts, and is not merely conclusory labels.

**B.      The Trustee adequately pled the elements of his claims, which does not include knowledge of the Platinum fraud scheme.**

Meadows Capital argues that "to state a plausible transfer claim, the plaintiff must plead facts demonstrating that the investor or transferee clearly knew or should have known of the transfer's fraudulent intent." Mot., at 3. But that misstates the law. "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transfer." *In re Bernard L. Madoff Inv. Sec., LLC*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016). To support its argument, Meadows Capital cites *In re Southmark Corp.* But that case supports the Trustee's position.

In *Southmark*, the Fifth Circuit held that the defendant was a subsequent transferee because it had received money from the initial fraudulent transfer, and that the defendant could not establish a § 550(b)(1) affirmative defense because it had sufficient knowledge of the voidability of the initial transfer. 239 F.3d 365, at *4 (5th Cir. 2000) ("In this case, we find that the district court was correct in concluding that Schulte was a subsequent transferee of a portion of the $3.3 million transfer between Southmark and the Parks Group. We also agree with the district court that the bankruptcy court did not clearly err in concluding that Schulte had sufficient knowledge of the voidability of the $3.3 million transfer so as to lose the protection of the § 550(b)(1) defense to liability."). The defendant's knowledge of any fraud was relevant only to that defendant's § 550(b)(1) defense. *Id.* at *6.

Here, the Trustee has adequately pleaded that the initial transfers are avoidable, Compl., ¶¶ 9-20 (describing Platinum's scheme to redeem preferred equity ahead of the Noteholders); ¶¶ 191-214 (alleging the initial transfers are voidable), and that Meadows Capital is a subsequent transferee of those transfers, Compl., ¶ 83. Whether Meadows Capital was actually aware of the fraudulent intent or involved in the scheme are not elements for the Trustee's subsequent

3

transferee liability claim and do not require pleading in the complaint. At most, knowledge of the potential for fraud (broader than the specific Platinum scheme) or potential insolvency would be relevant to Meadows Capital affirmative defense under § 550(b). It would be inappropriate to dismiss the Trustee's complaint based on Meadows Capital's affirmative defenses at this stage in the litigation. *See Schmidt v. Meridian Capital Foundation*, Adv. No. 19-3330, Dkt. No. 49, at 13-14. But even if the Trustee were required to plead facts regarding Meadows Capital's affirmative defense, the Complaint does so. Meadows Capital did not take in good faith and was on notice regarding the voidability of the transfers. Compl., ¶¶ 52-75, 118-19, 134-36, 139, 145-52, 154-55, 157-59, 163-66, 167, 170-73, 176-79. Meadows Capital also cannot establish that it took for value because its redemption was based on an equity interest. Compl., ¶¶ 173, 178, 186, 190.[2]

## C.    Punitive damages are potentially recoverable.

Although older cases addressing Bankruptcy Code Section 550 found that punitive damages are not recoverable under Section 550, those cases did not address the availability of punitive damages under TUFTA. The Fifth Circuit recently held that punitive damages are

---

[2] Similar to the argument above on pleading knowledge of the Platinum fraudulent scheme, Meadows Capital suggests in its preliminary statement, Mot., at 3, that the Complaint must allege Meadows Capital's lack of good faith in connection with its receipt of Black Elk funds. Again, that is not an element of the Trustee's claims against Meadows Capital. Instead, that falls within the scope of its affirmative defenses for which the defendant bears the burden of pleading and proof. The Court previously has rejected this same argument in the prior motion to dismiss filed by the Meridian Capital defendants. *See Schmidt v. Meridian Capital Foundation*, Adv. No. 19-3330, Dkt. No. 49, at 13-14. Thus, Meadows Capital challenge to the Complaint on this basis fails and its motion should be denied. Meadows Capital bears the burden of pleading and proving its affirmative defenses. *Id.* The Trustee's Complaint does not have to affirmatively disprove Meadows Capital's potential affirmative defenses, and the Motion should be denied. But even if the Trustee bore any burden of pleading with respect to the affirmative defenses, the Complaint adequately pleads sufficient facts to negate them. *See* Compl., ¶¶ 52-75, 118-19, 134-36, 139, 145-52, 154-55, 157-59, 163-66, 167, 170-73, 176-79 (good faith and notice of avoidability); ¶¶ 173, 178, 186, 190 (for value). The Trustee also incorporates by reference his briefing in his Opposition to the Motion to Dismiss of Defendant Leon Meyers (Dkt. 51), Section III(D).

recoverable on a TUFTA claim, referencing TUFTA Sections 24.008(a)(3)(c) and 24.009(c)(1).
*In re Galaz*, 850 F.3d 800, 806-07 (5th Cir. 2017).  The Trustee, depending on the equities, may
recover punitive damages if he prevails on his TUFTA claim.

**D.      The Trustee's claims are timely.**

The Trustee timely filed this recovery action within the applicable statute of limitations
period set forth in Bankruptcy Code § 550(f).[3]  The Trustee timely brought actions and avoided
the underlying initial transfers in the cases against the Platinum and PPBE transferees.  *See infra*
Section III(D)(2).  Further, because the Trustee timely brought those avoidance cases (under
Section 546(a)) against Platinum and PPBE, and then timely brought this case against Meadows
Capital within the recovery limitations (Section 550(f)) period, Meadows Capital cannot assert a
limitations defense.  *See* Sections III(D)(3) and III(D)(4).  Finally, equitable tolling should apply
if necessary.  *See* Section III(FD)(5).

**1.      The limitations statutes and key limitations dates.**

Avoidance and recovery actions "are separate and distinct" concepts, and "each type of
action is subject to different defenses, including separate statutes of limitations" under the
Bankruptcy Code. *Madoff 2013*, 501 B.R. at 30. The avoidance limitations in Section 546(a)
provide in pertinent part that "[a]n action or proceeding under section 544, 545, 547, 548,
or 553 of this title" may not be commenced after "2 years after the entry of the order for
relief…."  The recovery limitations period in Section 550(f) provides:

(f)      An action or proceeding under this section may not be commenced after the
earlier of—

(1)      one year after the avoidance of the transfer on account of which recovery
under this section is sought; or

---

[3] Meadows Capital joins in the motion to dismiss filed by GRD Estates Ltd. in Adv. Pro. No. 19-3361, at Dtk. No.
21. Accordingly, the Trustee incorporates by reference his opposition to GRD's motion, at Dtk. No. 29.

(2)      the time the case is closed or dismissed.

This statutory scheme allows a trustee, at its option, to pursue avoidance and recovery actions separately and sequentially.  *See Madoff 2013*, 501 B.R. at 32.

The Trustee filed two avoidance actions—the Platinum Avoidance Action and the PPBE Avoidance Action—within two years of the Order for Relief, and the Trustee filed this case against Meadows Capital within one year of the earliest of the default judgments entered in those actions.  This case therefore is timely.  *See In re Heritage Org., LLC*, 2011 WL 1793327, at *4, 10 (Bankr. N.D. Tex. May 11, 2011) (subsequent transferee case filed within one year of avoidance judgment timely); *Madoff 2013*, 501 B.R. at 28, 36 (using the court approval of the Fairfield consent judgment on July 13, 2011 as the Section 550(f) limitations trigger, and finding no triggering for Kingate because Kingate claims had not been avoided and remained pending); *In re Serrato*, 233 B.R. 833, 835 (N.D. Cal. 1999) (Section 550(f) "limitations period begins to run once the avoidance action is final," i.e. where the court "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."); *compare with In re Data Lease Fin. Corp.*, 176 B.R. 285, 287-287 (S.D. Fla. 1994) (Section 550 limitations was not triggered by granting of motion for partial summary judgment that transfer was preference because that partial summary judgment "did not constitute a final order or final judgment avoiding the transfer.").

## 2.      The Trustee avoided the initial transfers in the default judgments entered June 29, 2018 (PPBE) and September 20, 2018 (Platinum).

The Trustee timely filed the Platinum Avoidance Action on October 26, 2016 and the PPBE Avoidance Action on August 31, 2017, in both cases seeking the avoidance of the underlying transfers under Bankruptcy Code Sections 548 and 547 as Counts 1-3, and also as predicates to the subsequent transferee liability claims under Bankruptcy Code Section 550 and

887747.1

TUFTA, as Counts 4 and 5. *See* Adv. No. 16-3237, Dkt. No. 1; Adv. No. 17-3380, Dkt. 26.  In both cases, liability was premised on the avoidance of the initial transfers.

### a.  The avoidances in the Platinum Avoidance Action.

The initial transfers to PPVAF and PPVA Black Elk Equity were avoided in the interlocutory default judgments in the Platinum Avoidance Action.[4]  On December 12, 2017, the Trustee filed a motion for entry of default judgment in the Platinum Avoidance Action. Adv. No. 16-3237, Dkt. No. 94.  The Trustee's motion sought relief based on the liability facts set forth in its Complaint and Emergency Application for relief, and was based upon avoiding the initial fraudulent transfers. *Id.*  Further, the Trustee's supplement to the motion for entry of default judgment with respect to PPVAF made clear that the Trustee and PPVAF Liquidators agreed that the stipulated default judgment amount was for the "Trustee's claim for recovery of the Direct PPVA Transfer" (defined as "PPVA was the recipient of fraudulently transferred funds of Black Elk totaling US$15,332,672.97 from Black Elk to PPVAF).  Adv. No. 16-3237, Dkt. No. 117 at Ex. 1.

The Court entered an interlocutory default judgment in the Platinum Avoidance Action on September 20, 2018, entering judgment against PPVAF for $15,332,672.97 and against PPVA Black Elk (Equity) LLC for $154,500,000.  Adv. No. 16-3237, Dkt. No. 121,[5] attached as

---

[4] Trustee's avoidance claims against the PPCO and PPLO defendants were settled without admission of liability, dismissed without prejudice and subject to "reassertion," Adv. No. 16-3237, Dkt. Nos. 89 and 122, making those claims non-final.  In any event, a settlement, not reduced to judgment, does not trigger the limitations period under Section 550(f). *See In re AVI, Inc.*, 389 B.R. 721, 735 (B.A.P. 9th Cir. 2008) ("The settlement agreement specifies that it is a compromise of disputed claims and does not constitute an admission, express or implied, of liability by any party. Therefore, we cannot conclude that the transfer here was 'actually avoided' because the settlement specifically renounced liability."). The avoidance claims against PPCO and PPLO were asserted and avoided in the default judgments in the PPBE case.

[5] The default judgment against PPVA Black Elk Equity included the initial transfer amount of $32,563,819.73.  Compl., Adv. No. 16-3237, Dkt. No. 1, ¶ 85, and  Emergency Application, Declaration, Dkt. No. 3, Ex. 76.6.

Ex. 2.  The remainder of the Trustee's claims against PPVAF (*e.g.*, alter ego) remain pending. Ex. 2 at ¶ 13.

> **b.      The avoidances in the PPBE Avoidance Action.**

Similarly, the Trustee moved for entry of default judgment in the PPBE Avoidance Action on May 21, 2018.  Adv. No. 17-3380, Dkt. No. 42.  On June 29, 2019, the court entered default judgment in the PPBE Avoidance Action against PPBEO in the amount of $32,802,572.16 and against PPBEOI in the amount of $39,022,229.15.  Adv. No. 17-3380, Dkt. No. 47, attached as Ex. 3.

> **c.      The default judgments were avoidances of the initial transfers.**

The process for a default judgment is that (1) "when a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact," (2) the court then determines "if a sufficient basis for the pleadings is present," and (3) assuming the first two criteria are met, the court then enters the "default judgment on liability." *See, e.g., Graham v. Coconut LLC*, 2017 WL 2600318, *2-3 (E.D. Tex. June 15, 2017).  A court cannot enter a default judgment if it determines that the well-pleaded facts are not sufficient to find liability.  *Id.* at *2-3.

A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  As a result, a default judgment "is a judgment on the merits that conclusively establishes the defendant's liability."  *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *Farasat v. RP Managing Partners, LLC*, 2014 WL 125886306, *3 (N.D. Tex. Nov. 13, 2014) (same, quoting *Shipco Gen.*).[6]  Only after liability has been determined can the court

---

[6] *See also J&J Sports Prods., Inc. v. Circle R&R Inc.*, 2019 WL 937348, *3 (S.D. Tex. Feb. 11, 2019) ("a default judgment constitutes an admission of liability") (citation and internal quotation marks omitted);

address and award damages. *Graham*, 2017 WL 2600318 at \*3-4.  All of the causes of action against Platinum and PPBE providing a liability basis for damages required avoidance of the initial transfers.  *See, e.g.*, Adv. No. 17-3380 (PPBE), Dkt 26, Counts 1-5.  Thus, in entering an award of damages in each of the Platinum and PPBE Avoidance Actions, the Court necessarily entered a judgment on liability and avoided the underlying transfers.

Moreover, it is clear from the Trustee's motions that the Trustee was seeking default judgments based upon an avoidance of the initial transfers. *See, e.g.,* Platinum Avoidance Action, Adv. No. 16-3237, Dkt. No. 94 at ¶ 1 ("recovery of $97,959,854.79 fraudulently transferred…."), ¶¶ 3, 18 (as basis for entry of default and for prima facie case, relying on factual allegations in Complaint and Emergency Application, which was premised on avoiding the initial transfers); Adv. No. 16-3237, Emergency Application, Dkt. No. 2, at 34-41 (arguing and tendering evidence of substantial likelihood of success of avoiding initial transfers); *see also* PPBE Avoidance Action, Adv. No. 17-3380, Dkt. No. 42 at ¶ 3 ("this case involves the secondary transfer from the initial Platinum recipients…."), ¶¶ 4-5 (referencing allegations of initial fraudulent transfers to Platinum recipients, as well as Trustee's Emergency Application and Court's TRO Order in Adv. No. 16-3237), ¶ 10 ("As proof that the Trustee is entitled to the relief requested in the Complaint…, the Trustee relies on the factual allegations of the Complaint in this case, as well as the Emergency Application …, and the Declaration of Craig Smyser and

---

*AE Mktg. LLC v. Jenkins-Baldwin Corp.*, 2013 WL 12226764, \*7 (N.D. Tex. Jan. 2, 2013) ("In entering default judgment, this Court … issued a finding of AE Marketing's liability."); *Birts v. Mott*, 2006 WL 1851386, \*2 (W.D. Tex. June 13, 2006) ("the Court finds that Defendants have admitted liability as alleged in the Complaint and default judgment is proper"); *Lumbermens Mut. Cas. Co. v. Basswood Group, LP*, 2005 WL 3447737, \*2 (W.D. Tex. Dec. 7, 2005) (in entering default judgment similar to this Court's findings on record at hearing; "Court finds that Defendants have admitted liability as alleged in the Complaint, default judgment is proper, and sufficient evidence has been produced to support Plaintiff's liquidated damages."); *Hamilton v. Bus. Partners, Inc.*, 2000 WL 108849, \*2 (E.D. La. Jan. 28, 2000) (default judgment conclusively establishes liability).

887747.1

documentary exhibits accompanying the Emergency Application to establish a prima facie case….”), ¶ 10 n. 2 referencing Court's granting of TRO, finding substantial likelihood of success based on avoiding initial transfers); *Id.*, Waggoner Aff., ¶¶ 4-7, Exs. A-D (calculating default damage award amounts based upon money fraudulently transferred from Black Elk to PPVAF, PPCO, PPLO and PPVA Black Elk Equity, and then from those four Platinum entities to PPBEO and PPBEOI).

Further, the default judgments themselves reflect that they were premised on liability findings. Both judgments begin by stating the judgments are issued "[f]or the reasons set forth on the record on this date…." Exs. 2 and 3. A review of the transcripts in each avoidance action confirms the Court's award of damages was based on liability findings.[7] *See* Exs. 4 and 5. In the Platinum Avoidance Action, the Court specifically reasoned and ruled: "I find liability was established, as I've indicated before, based on the day one order that we issued with the injunctive relief, and that it was based on the record that was submitted with the injunction and there's been no change in the record since that date that would alter those findings." Ex. 4, at 15; *Id.* at 10 (discussing the pleadings with respect to the TRO as establishing liability for the initial

---

[7] The Court was not required to enter findings of fact or conclusions of law in the default judgment. *See* Fed. R. Civ. P. 52(a); *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973). As explained in Brown, a judgment by default is not considered a trial and thus Rule 52(a) does not require findings of fact or conclusions of law, except as to damages. 477 F.2d at 531. The default judgment is "as conclusive an adjudication of the issues for purposes of res judicata as a judgment rendered after a trial on the merits" and the "allegations of the complaint, in effect, become findings of fact." *Id.* Nonetheless, even if the Court were required to make findings, those findings and conclusions may be stated on the record. Fed. R. Civ. P. 52(a)(1) ("The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum decision filed by the court."). Finally, even if Rule 52(a) applied, a finding of avoidance of the initial transfers, necessary for liability, would be implied in the Court's ruling and default judgment. *See, e.g., Luhr Bros., Inc. v. Crystal Shipowning, PTE*, 325 F.3d 681, 685 (5th Cir. 2003) ("Although the trial court made no separate finding of proximate cause, it is implicit in the trial court's negligence findings and apportioning of liability."); *Transfirst Holdings, Inc. v. Magliarditi*, 574 F. App'x 345, 345-46 (5th Cir. 2014) ("Rule 52(a) … 'exacts neither punctilious detail nor slavish tracing of the claims issue by issue and witness by witness.' Consequently, '[i]f a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with its general holding so long as the implied finding is supported by the evidence.'") (citations omitted) (addressing detrimental reliance).

fraudulent transfers).[8]  In the PPBE Avoidance Action, the Court specifically confirmed "that the allegations and the complaint are now deemed admitted as a result of the default of the defendants." Ex. 5, at 6.  In each case then, the Court clearly expressed a finding of liability based upon and avoiding the initial fraudulent transfers.

In sum, the default judgments constitute avoidances of the initial transfers.  *See*, *e.g.*, *In re Ryan*, 472 B.R. 714, 729 (E.D. Va. 2012); *In re Steele's Market, Inc.*, 304 B.R. 447, 452 (Bankr. D. Colo. 2004) (court agreeing that "issue previously decided by the default judgment was whether the transfers to M&S are voidable").

> **3.** **The Trustee was not required to either avoid in a prior case or bring this subsequent transferee recovery lawsuit within the Section 546(a) limitations period.**

Courts that have considered similar circumstances to this case, including the *Madoff 2013* decision, support the Trustee's position.  In that case, like here, the subsequent transferee defendants argued that "the Trustee's recovery proceedings against them under section 550(a) must be dismissed because the Trustee failed to bring avoidance actions against *them* within the two-year statute of limitations provided by section 546(a) for avoidance actions." *Madoff 2013*, 501 B.R. at 34. The court disagreed, and given the substantial similarities, the opinion is instructive.

The *Madoff 2013* trustee "brought timely avoidance actions" under Section 546(a) against two initial transferees—Fairfield and Kingate. 501 B.R. at 28, 34. The trustee sued subsequent transferees in a separate action for recovery under Section 550.  *Id.* at 34.  The trustee then entered into a settlement agreement in the avoidance action with Fairfield's liquidators that

---

[8] The Court specifically was referring to the Trustee's Emergency Application, seeking a TRO based upon the initial fraudulent transfers from Black Elk to each of the four initial Platinum transferees, PPVAF, PPCO, PPLO and PPVA Black Elk Equity.  Adv. No. 16-3237, Dkt. No. 2 at 34-41.1.

involved entry of "a consent judgment in favor of the Trustee for the entire amount of transfers sought to be avoided" against Fairfield. *Id.* at 28. The avoidance action against Kingate remained pending when the subsequent transferees moved to dismiss in *Madoff 2013*. *Id.* Like Meadows Capital here, the subsequent transferees in *Madoff 2013* argued that the trustee had "failed to avoid the relevant transfers" and thus was precluded from recovery against them under Section 550. *Id.* at 29.

The *Madoff 2013* court disagreed, and held a trustee is not required to obtain an "actual, adjudicated judgment of avoidance" prior to asserting a recovery action. 501 B.R. at 28-29. The court explained that "Section 550(a) requires that the Trustee show that the transfer he seeks to recover is avoidable in each recovery action…." *Id.* The court further supported its conclusion noting that "the majority of courts that have considered this issue have rejected the notion that a trustee must first avoid a transfer against an initial transferee prior to recovering that transfer from subsequent transferees." *Id.* at 31 (*citing AVI*). Thus, even if the initial transfers were not avoided in the Platinum or PPBE Avoidance, the Trustee may still pursue this recovery action against Meadows Capital.

The motion joined by Meadows Capital also incorrectly argues that the initial transfers cannot now be avoided because any avoidance claims are barred pursuant to Bankruptcy Code Section 546(a).[9]  The court in *Madoff 2013* also expressly rejected that argument, stating "as

---

[9] GRD cited *Williams v. McKesson Corp. (In re Quality Infusion Care, Inc.)*, 2013 WL 6189948, *11 (Bankr. S.D. Tex. Nov. 25, 2013), for the proposition that "[i]f an underlying transfer is never avoided (due to a default judgment or stipulated dismissal)", then a plaintiff must prove both avoidability and recovery in the action against a subsequent transferee. Unlike the circumstances here, the trustee in *Williams* had not brought a prior avoidance action, and the court was not addressing the issue of limitations. The case does not support the suggestion in GRD's parenthetical that a default judgment does not affect an avoidance or that an action against a subsequent transferee after a default in an avoidance action must be filed within the limitations period applicable to avoidance actions.

applied to the defendants' argument here, a subsequent-transferee defendant is entitled to bring a statute-of-limitations defense to avoidance [Section 546(a)] **only if** the Trustee failed to bring any avoidance action with respect to the initial transfer (against either the initial or subsequent transferee) within section 546(a)'s two-year limitations period." *Madoff 2013*, 501 B.R. at 35 (emphasis added).

The *Madoff 2013* court noted that the Madoff trustee incorporated the Fairfield and Kingate complaints, and "further alleges the avoidability of these [initial] transfers outright." *Madoff 2013*, 501 B.R. at 36.  Finding avoidability "sufficiently pleaded for purposes of section 550(a)," the court held that "it is uncontested that the Trustee's **avoidance actions against Kingate and Fairfield were timely, and so no statute of limitations defense to avoidance is available to the defendants here**." *Id.* (emphasis added). The same result applies here. It is undisputed that the Trustee timely brought avoidance claims within the Section 546(a) avoidance limitations time period, and therefore no statute of limitations defense to avoidance is available to Meadows Capital.

The *Madoff 2013* court is not alone in reaching this result. *See e.g. Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC,* 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012) (Lifland, J.) ("*Madoff 2012*"), attached as Ex. 6. The *Madoff 2012* court held that "the Trustee may recover from [subsequent transferee] BLI under Section 550 because the Trustee timely filed a complaint against Fairfield Sentry alleging the initial transfers from BLMIS to Fairfield Sentry are 'avoidable' under section 548 of the Code." *Id.* at 520.

> The *AVI* court echoed the district court's sentiments that Section 550 "should be interpreted to provide flexibility." *In re AVI,* 389 B.R. at 735.  In the context of settlements in particular, it relied on such flexibility to "avoid [the] absurd result" of precluding a trustee from "pursuing subsequent transferees after settling with an initial transferee who does not admit liability." *Id.* (emphasis added). The court emphasized that "Congress could not have contemplated this outcome in enacting

§ 550" because it would lead to trustees having "little incentive to partially settle avoidance actions, thereby running up the costs of litigation and causing further delay." *Id.*

*Madoff 2012*, 480 B.R. at 521.  In *Madoff 2012*, "[t]o avoid such an impractical result, the Court construes Section 550 flexibly to require only avoidability to pursue recovery from BLI." *Id.* The same approach applies in this case, where the Trustee timely filed both the Platinum and PPBE Avoidance Actions seeking to avoid the initial transfers.

Finally, this argument also was addressed and rejected recently in *In re ContinuityX, Inc.*, 582 B.R. 124, 131-136 (Bankr. S.D.N.Y. 2018) (Vyskocil, J.), in which the earlier-filed avoidance action ended with a stipulated dismissal.  In that case, the court agreed with and followed the *Madoff 2012* and *Madoff 2013* opinions.  The holding in *In re ContinuityX* confirms a timely-filed avoidance action satisfies the 546(a) limitations requirement for later-filed recovery actions, even if the first action was resolved with a stipulated dismissal.  Likewise, in this case, the avoidance statute of limitations defense is not available to the subsequent transferees because the Trustee timely brought avoidance claims in both the Platinum and PPBE Avoidance Actions, and then timely brought this case within one year of the final default judgment in the PPBE case.

The two cases cited in the GRD motion, which Meadows Capital joins, do not address or establish a contrary result. In *In re AVI, Inc.,* 389 B.R. 721 (BAP 9th Cir. 2008), the court merely addressed and held as "a matter of first impression" in the Ninth Circuit that "the trustee did not need to avoid the initial transfer from debtor to Maverick, or other prior transferees, before seeking recovery under § 550(a) from W&E." *Id.* at 731-735. That now unremarkable proposition is not at issue in this case. The *AVI* court did not address, let alone hold, that the Section 546(a) limitations period applies to a recovery action in the circumstances of this case.

14

The dicta in *AVI*, that courts should give "effect to the different statutes of limitations for avoidance under § 549 [it was a post-petition case] and recovery under § 550,"[10] as well as the language referenced by GRD that if the trustee prosecutes separate adversary proceedings, then the Section 549 limitations period applies to the initial avoidance action and the Section 550(f) limitation applies to the subsequent transferee case, are consistent with the Trustee's position and cited authority, as made clear by the *Madoff 2012* opinion's discussion of *AVI*.  *Compare to* GRD Mot. at 8, ¶ 18.[11]

*In re Swanson*, 13 B.R. 851 (Bankr. D. Idaho 1981), is likewise inapplicable.  There the court addressed whether debtors could assert a counterclaim with respect to exempt property after the case was closed.  The court did not address or hold that Section 546(a) governs a recovery action in the circumstances of the present case.  At most, the Swanson case merely sets forth the non-controversial statement that different statutes of limitations govern avoidance and recovery actions.  *Swanson*, 13 B.R. at 854-855.

The Trustee's position also is consistent with the policies behind the Bankruptcy Code.  As the *Madoff 2013* court explained, a finding that an avoidance limitations defense is not available "makes sense within the structure of the Bankruptcy Code's avoidance and recovery provisions," otherwise the defendants' argument "would import the section 546(a) statute of limitations into all recovery proceedings, thereby conflating the separate concepts of avoidance and recovery, and rendering section 550(f) a nullity."  501 B.R. at 35.  The court further noted that, as in this case, the Section 550(f) statute of limitations "reflects the difficulties that may be

---

[10] *AVI*, 389 B.R. at 734.

[11] GRD is correct that *Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, 2017 WL 5067603, *3 (S.D. Tex. Sept. 11 2017), cited to *AVI* with approval. GRD Mot. at 8, ¶ 18. However, *Guffy* also did not address the issues in this case, and merely cited with approval the *AVI* holding that a trustee is not required to first avoid a transfer from the initial transferee before pursuing subsequent transferees. *Id.*

887747.1

faced by a trustee in tracking down the various subsequent transfers that may occur after a debtor parts with his money." *Id*. at 36.  The court reasoned that "[i]n a complex case like this one, it is unreasonable that the Trustee, who is a stranger to any non-debtor transactions, would be expected to bring all recovery proceedings against subsequent transferees within section 546(a)'s two-year period." *Id.*

In this case, no avoidance statute of limitations defense is available to the subsequent transferees because the Trustee timely brought avoidance claims in both the Platinum and PPBE avoidance actions.  Accordingly, Meadows Capital's Motion should be denied.

> **4.** **Alternatively, if Meadows Capital is correct that no avoidance occurred in the Platinum or PPBE Avoidance Actions, then the Trustee's claims are timely because there has been no trigger for limitations under Section 550(f).**

The relevant statute of limitations in this case is Bankruptcy Code Section 550(f), which provides:  "An action or proceeding under this section may not be commenced after the earlier of—(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or (2) the time the case is closed or dismissed."  Here, it is undisputed that the main bankruptcy case, Case No. 15-34287, has not closed or been dismissed, making Section 550(f)(2) inapplicable.[12]

To the extent that the default judgments were not "avoidances," (550(f)(1)), GRD Mot., at 9, ¶ 20, and because the main bankruptcy case remains pending (550(f)(2)), the Section 550(f) statute of limitations has not been triggered, and the Trustee's claims are timely. *See, e.g., Madoff 2013*, 501 B.R. at 36 (finding no trigger with respect to claims related to Kingate, and citing *In re Maxim Truck Co., Inc.*, 415 B.R. 346, 353 (Bankr. S.D. Ind. 2009), which allowed "a

---

[12] The Platinum case has not been closed or dismissed, and remains pending.  The PPBE case was closed or dismissed on June 29, 2018 with the final judgment, less than one year before the filing of the case against Meadows Capital.  Ex. 3.

trustee to add a defendant as a subsequent transferee after seven years had elapsed when the 'period of time to initiate an action under § 550 for recovery of an avoided transfer has not yet even been triggered, let alone expired, against any of the Defendants.'"); *In re Grove Peacock Plaza, Ltd.*, 142 B.R. 506, 520 (Bankr. S.D. Fla. 1992) ("Since the transfer has not yet been avoided, the statute has not yet begun to run on recovery.").

Here, taking as true that no avoidance occurred in the Platinum or PPBE cases, the Trustee still is entitled to bring his claims against Meadows Capital because he did bring timely avoidance claims in the Platinum and PPBE cases, and there has been no trigger for the limitations period in Section 550(f). *See supra* Section III(D)(3). The Trustee, though, may have to prove his avoidance claims in the subsequent transferee liability cases.[13]

Even if the Court rejects the Trustee's arguments on the interpretation of and interplay between Section 546(a) and Section 550(f), the Trustee's claims still are timely because any statute of limitations was equitably tolled until the Trustee was able to discover the identity of the PPBE investors. As the Supreme Court has held, the doctrine of equitable tolling is read into every federal statute of limitations. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). Thus, whether Section 546(a) or Section 550(f) governs the limitations in this case makes no difference because they both may be equitably tolled.

This Court has previously noted that Section 546(a) may be equitably tolled. *In re IFS Fin. Corp.*, 02-39553, 2010 WL 4614293, at *3 (Bankr. S.D. Tex. Nov. 2, 2010). And this Court is not alone in applying equitable tolling to the Bankruptcy Code; courts around the country have consistently done so. *See, e.g.*, *In re Vallecito Gas, LLC*, 461 B.R. 358, 398 (Bankr. N.D. Tex.

---

[13] Although the prior default judgments are avoidances, *see supra* Section III(D)(2), those default judgments probably do not have preclusive effect on Meadows Capital or the other subsequent transferees.

2011) (applying equitable tolling to § 549); *In re Olsen*, 36 F.3d 71, 73 (9th Cir. 1994) (noting that both § 549 and § 546 can be equitably tolled); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 700 (11th Cir. 2005) (applying equitable tolling to § 546).  And although the Trustee has not yet identified any case applying equitable tolling to Section 550(f), there is no logical reason for the doctrine not to apply. Because as the Supreme Court has made clear, the doctrine applies to every federal statute of limitation. *Holmberg*, 327 U.S. at 397.

In the context of a claim for fraudulent transfers, "the statute of limitations begins to run when the Trustee either acquired or should have acquired actual knowledge of the existence a cause of action." *In re Juliet Homes, LP*, 07-36424, 2010 WL 5256806, at *11 (Bankr. S.D. Tex. Dec. 16, 2010) (Isgur, J.).  And, in this case, the Trustee need not show that Meadows Capital participated in concealing the fraudulent transfers. *See id.* ("In a fraudulent transfer action in a bankruptcy case, equitable tolling is typically based on the conduct of the Debtors rather than the defendants.").

To prove that he is entitled to equitable tolling, the Trustee must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Since his appointment, the Trustee has diligently sought the money that was fraudulently transferred from Black Elk and has pursued those companies and individuals who perpetrated that fraud. At every step of the way the Trustee has faced extraordinary hurdles. Most of the companies that defrauded Black Elk are no longer functioning, are in bankruptcy or liquidation, or have no employees. And the people that did control these companies have refused to provide information or documents, having invoked their Fifth Amendment rights against self-incrimination. Accordingly, the Trustee is entitled to

equitable tolling and any limitations for any PPBE defendants should not have begun to run until the Trustee was first able to learn of their identities.

Here, the Trustee has pled equitable tolling facts and also been diligent in his pursuit of Black Elk's money. The Trustee first brought an adversary proceeding against the initial Platinum transferees, Compl., ¶ 42, whose principals were subject to criminal prosecution and liquidation.  The Liquidators for those entities only have produced documents to the Trustee in 2019, after the Liquidators themselves received access to the documents in approximately the middle of 2018. The Trustee brought a proceeding against PPBEO and PPBEOI as subsequent transferees, Compl., ¶ 43, but again the principals were subject to prosecution, did not appear, and no discovery could be undertaken before the default judgment.  The Trustee' efforts further have been frustrated because of the Platinum entities' concealment of facts. *Id.*  Many of the persons associated with Platinum have refused to talk or produce documents. *See, e.g.*, Compl., 12 n.1, 13 n.4, 23 n.34. In his Complaint, the Trustee pleads that he was only able to learn the identities of the PPBE investors in Fall 2018, as part of post-judgment discovery in the PPBE Avoidance Action.  Compl., ¶ 188.   Accordingly, the Complaint states an adequate basis for the Court to believe that equitable tolling is appropriate, and the Court should deny Meadows Capital's motion.

Whether the Trustee is entitled to equitable tolling is a fact-specific inquiry.  "Because the applicability of equitable tolling is a fact-based decision, the bankruptcy court determines whether equitable tolling governs on a case-by-case basis." *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 701–02 (11th Cir. 2005). Accordingly, whether the Trustee's claims have been equitably tolled is not properly resolved at the 12(b)(6)-stage. "Because the issue of equitable tolling is fact specific, it is more appropriately determined on a motion for summary judgment,

19

rather than a motion to dismiss." *In re Sia*, 349 B.R. 640, 650 (Bankr. D. Haw. 2006) ("The second amended complaint does not directly address the trustee's diligence in discovering the concealment, but it is unnecessary to require amendment of the complaint to add allegations of diligence.  The reason is that the issue of whether a claim has been equitably tolled is a question of fact and 'ordinarily requires reference to matters outside of the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone.'" (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993)); *see also In re Nat'l Serv. Indus., Inc.*, 2015 WL 3827003, at *8 (Bankr. D. Del. June 19, 2015) ("Thus, from the face of the Complaint the Court cannot conclude that the equitable tolling provision does not apply. Therefore, the Court concludes it would be inappropriate to dismiss the Trustee's actually fraudulent transfer claims at this point."); *In re Pitt Penn Holding Co.*, 484 B.R. 25, 44 n.50 (Bankr. D. Del. 2012) (noting that equitable tolling is not usually appropriate at the 12(b)(6) stage). Thus, because whether the Trustee's claims have been equitably tolled should not be considered at this stage, the Court should deny Meadows Capital's motion as to limitations.

However, if the Court determines that the Complaint does not provide a sufficient basis to invoke equitable tolling, the Trustee should be allowed to amend, and provide further detail regarding equitable tolling.  *See In re MacGregor Sporting Goods, Inc.*, 199 B.R. 502, 515 (Bankr. D.N.J. 1995) ("The trustees, however, will be directed to amend the complaint within 30 days of the date of this Opinion to plead, the applicability of the equitable tolling doctrine in this matter.").

## IV.    Conclusion

The Court should deny Meadows Capital's motion to dismiss.

887747.1

Respectfully submitted,

Smyser Kaplan & Veselka, L.L.P.

By: _/s/  Craig Smyser_
  Craig Smyser
  Attorney-in-Charge
  Texas Bar No. 18777575
  Fed. Bar No. 848
  700 Louisiana, Suite 2300
  Houston, Texas 77002
  713-221-2300
  713-221-2320 (fax)
  csmyser@skv.com

Of Counsel:

Smyser Kaplan & Veselka, L.L.P.
Jeff Potts
Texas Bar No. 00784781
Fed. Bar No. 16504
Justin Waggoner
Texas Bar No. 24003122
Fed. Bar No. 23098
700 Louisiana, Suite 2300
Houston, Texas 77002
713-221-2300
713-221-2320 (fax)
jpotts@skv.com
jwaggoner@skv.com

Okin Adams LLP
Matthew Okin
Texas Bar No. 00784695
Fed. Bar No. 15204
David Curry, Jr.
Texas Bar No. 24065107
Fed. Bar No. 975482
1113 Vine St., Suite 201
Houston, Texas 77002
713-228-4100
888-865-2118
mokin@okinadams.com
dcurry@okinadams.com

**ATTORNEYS FOR TRUSTEE**

887747.1

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing opposition was served on counsel for Defendants in accordance with Rule 7005 of the Federal Rules of Bankruptcy Procedure on the 21st day of August, 2019.

/s/  Jeff Potts
Jeff Potts

887747.1