UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | CASE NO. 15-34287 (MI) |
| OPERATIONS, LLC | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| RICHARD SCHMIDT, LITIGATION TRUSTEE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 4:19-AP-03459 |
| | § | |
| BERNARD FUCHS, LEON MEYERS, MEADOWS | § | |
| CAPITAL, LLC, BERNARD W. EDELSTEIN, | § | |
| LEGACY INVESTMENT PARTNERS, LLC, | § | |
| DITMAS PARK CAPITAL, L.P., AND | § | |
| ROCKWELL FULTON CAPITAL, L.P. | § | |
| | § | |
| DEFENDANTS. | § | |

**TRUSTEE'S OPPOSITION TO THE MOTION TO DISMISS
OF DEFENDANT BERNARD EDELSTEIN (DKT. 56)**

882351.5

**TABLE OF CONTENTS**

I.      Introduction and Summary of the Argument ........................................................1

II.     Background ........................................................................................................1

III.    Argument ..........................................................................................................2

        A.      The general 12(b)(6) legal standards. ....................................................2

        B.      Bernard Edelstein is the proper defendant and a subsequent transferee,
                who had dominion and control over the Black Elk proceeds. ..................3

        C.      The Trustee can recover from Edelstein as a "subsequent transferee" under
                TUFTA's actual and constructive fraud standards; there is no exclusion of
                subsequent transferees. ........................................................................4

        D.      Under both TUFTA and § 550, Edelstein bears the burden to plead and
                prove his affirmative defenses. ..............................................................7

IV.     Conclusion ......................................................................................................10

Certificate of Service ...............................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex. Inc.*,
  2010 WL 565283 (S.D. Tex. Feb. 17, 2010) ...........................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................2

*Brady v. Park*,
  2019 WL 2051350 (Utah May 8, 2019).....................................................................................3

*Clark v. Amoco Prod. Co.*,
  794 F.2d 967 (5th Cir. 1986) .....................................................................................................8

*Club Retro, L.L.C. v. Hilton*,
  568 F.3d 181 (5th Cir. 2009) .....................................................................................................2

*E. Sav. Bank v. Bucci*,
  2008-Ohio-6363 (Ohio Ct. App. 2008)......................................................................................5

*In re Bernard L. Madoff Inv. Sec., LLC*,
  440 B.R. 243 (Bankr. S.D.N.Y. 2010)...................................................................................8, 9

*In re Dreier LLP*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011)........................................................................................9

*In re Sexton*,
  166 B.R. 421 (Bankr. N.D. Cal. 1994) .......................................................................................5

*In re Tex. Rangers Baseball Partners*,
  498 B.R. 679 (Bankr. N.D. Tex. 2013).......................................................................................2

*In re Vaughan Co., Realtors*,
  2014 WL 271632 (Bankr. D.N.M. Jan. 23, 2014) .....................................................................3

*Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999)........................................................................................9

*Janvey v Golf Channel, Inc.*,
  487 S.W.3d 560 (Tex. 2016).......................................................................................................4

*Longmire v. Sea Drilling Corp.*,
  610 F.2d 1342 (5th Cir.1980) .....................................................................................................6

*Lormand v. U.S. Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ..............................................................2

*McConkie v. Rice Properties*,
   2012 WL 2120066 (D. Utah June 11, 2012) ...........................................5

*Muse Family Enterprises, Ltd. v. BTM Funding, Inc.*,
   2014 WL 4840667 (Cal. Ct. App. Sept. 30, 2014) ..................................6

*Regions Bank v. Kaplan*,
   2017 WL 2868413 (M.D. Fla. Apr. 10, 2017) .........................................3

*Town of Nottingham v. Bonser*,
   146 N.H. 418, 777 A.2d 851 (2001) .......................................................5

*Wheeler Bros. Inc. v. Jones*,
   167 F.Supp.3d 1283 (M.D. Ala. 2016) ...................................................5

**Statutes**

11 U.S.C. § 548(c) .....................................................................................9

11 U.S.C. § 550 .......................................................................................1, 7

11 U.S.C. § 550(b) ..................................................................................8, 9

CA Civ. Code § 3439.04 ...........................................................................6

Civ. Code § 3439.08, *et. seq.* ....................................................................6

TEX. BUS. & COM. CODE § 24.001 *et seq.* ..........................................1, 4, 6, 7

TEX. BUS. & COM. CODE § 24.005(a)(1) .............................................4, 5, 6

TEX. BUS. & COM. CODE § 24.009(a) .........................................................*passim*

TEX. BUS. & COM. CODE § 24.009(b)(2) ............................................4, 5, 6, 7

TEX. BUS & COM. CODE § 24.012 ...............................................................7

**Other Authorities**

FED. R. CIV. P. 8(a) ...................................................................................2

FED. R. CIV. P. 12(b)(6) ............................................................................2

iv

## I.      Introduction and Summary of the Argument

The Trustee's claims against Edelstein are for subsequent transferee liability under Bankruptcy Code § 550 and the Texas Uniform Fraudulent Transfer Act ("TUFTA"). To properly plead a subsequent transferee claim, the Trustee must only plead that (1) the initial transfer has been avoided or is avoidable, and (2) the subsequent transferee must have been a recipient of the initially transferred funds.  Here, the Trustee has done so.

Edelstein argues (1) TUFTA provides an absolute defense to subsequent transferees in cases of actually fraudulent transfers; (2) the Complaint does not negate his affirmative defense of good faith; and (3) that the proper defendant in this case is his IRA account, not him. Mot. at 1-2. These arguments all fail. First, TUFTA Section 24.009(a) does not provide an absolute defense to subsequent transferees and reading such defense into the statute would be inconsistent with established precedent and thwart TUFTA's remedial purpose. Second, as this Court has noted, under both the Bankruptcy Code and TUFTA, "good faith" is an affirmative defenses not an element of Trustee's claims and the Trustee is not required to plead facts negating an as-yet, unpled affirmative defenses. Third, Edelstein's IRA account is not a separate legal entity, and Edelstein is the proper defendant in this action. The Court should deny Edelstein's motion.

## II.      Background

In the summer of 2014, Platinum and its principals looted nearly $98 million from Black Elk.  To the extent that Black Elk was not already insolvent, this theft left Black Elk insolvent. Platinum and its principals sent the $98 million through the Platinum entities to a small group of its long-term investors with significant relationships to Platinum and its principals, including Mark Nordlicht's family, Murray Huberfeld's family foundation, Daniel Small and David Levy. Edelstein improperly received $203,328.01 of Black Elk's money. The Platinum entities and PPBE Investors did not take for value, in good faith or with a lack of knowledge of voidability.

In the ensuing and inevitable Black Elk bankruptcy, many Black Elk creditors, employees, and contractors were left holding the empty bag as Black Elk had no cash left to pay them.

## III.      Argument

### A.      The general 12(b)(6) legal standards.

In general, when deciding a Rule 12(b)(6) motion, the Court "must accept all well-pleaded facts as true, draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *see also In re Tex. Rangers Baseball Partners*, 498 B.R. 679, 711 (Bankr. N.D. Tex. 2013) ("In evaluating a Motion to Dismiss under Rule 12(b)(6), which is made applicable in this proceeding pursuant to Bankruptcy Rule 7012, a complaint is to be charitably construed, with all well pleaded factual allegations being accepted as true and with any reasonable inferences from those facts being drawn in favor of the non-moving party.").

Rule 8(a) simply requires the Trustee to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the complaint must be more than conclusory labels and a recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint here is replete with facts and is not merely conclusory labels.

**B.      Bernard Edelstein is the proper defendant and a subsequent transferee, who had dominion and control over the Black Elk proceeds.**

In his motion, Edelstein argues that he is not a proper defendant in this action because his IRA received the subsequent transfers of Black Elk money, not him personally. Mot. at 1. Further, Edelstein argues that the Trustee has sued him in his individual capacity to get around New York and bankruptcy laws that purportedly protect retirement accounts. Both are incorrect. The Trustee has sued Edelstein because a "self-directed IRA, like a savings account, is not a separate legal entity from its owner." *In re Vaughan Co., Realtors*, 10-10759, 2014 WL 271632, at *3 (Bankr. D.N.M. Jan. 23, 2014); *see also Brady v. Park*, 2019 WL 2051350, at *25 (Utah May 8, 2019) ("Unlike a trust or a business entity, a self-directed IRA is not a legal entity that is distinct from its owner."); *Regions Bank v. Kaplan*, 8:16-CV-2867-T-23AAS, 2017 WL 2868413, at *1 (M.D. Fla. Apr. 10, 2017) ("The predominant weight of authority holds that a plaintiff can sue the beneficiary of a self-directed IRA for the IRA's alleged wrongdoing because the self-directed IRA is not a separate legal entity from its owner." (internal citations and quotations omitted)). "For fraudulent transfer purposes . . . the transfer of funds by a third party to an individual's IRA has the same legal effect as if the funds were transferred directly to that individual." *In re Vaughan Co.*, 2014 WL 271632, at *3. Here, the Complaint alleges that Edelstein is the owner of an IRA account that was a transferee of $203,328.01 in Black Elk money, Compl., ¶ 89. Thus, the Trustee has sued Edelstein because he is legally the proper defendant.[1]

Edelstein admits his ownership of the IRA. Mot., at 7 ("his IRA"). Edelstein's investment was redeemed, and he had dominion and control over the Black Elk Proceeds. Edelstein could

---

[1] Edelstein cites no contrary authority that the owner of an IRA cannot be liable as a subsequent transferee. Should the Trustee obtain a judgment against Edelstein, he will be able to enforce that judgment against Edelstein, and not just Edelstein's IRA account.

have taken the redemption in cash (like other Defendants did), and then invested the entire amount in lottery tickets, uranium stocks, or at least anything allowed by an IRA account. *See Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993); *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 165 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

**C.    The Trustee can recover from Edelstein as a "subsequent transferee" under TUFTA's actual and constructive fraud standards; there is no exclusion of subsequent transferees.**

TUFTA allows the Trustee to recover against "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee."  Tex. Bus. & Com. Code § 24.009(b)(2). Edelstein argues that his status as a subsequent transferee is a complete defense to the Trustee's actual fraud claims under TUFTA. This argument, though, misconstrues the statutory language and purpose, and is contrary to the authority applying similar Uniform Fraudulent Transfer Act statutes.

As the sole support for his argument Edelstein cites a Texas Supreme Court case addressing the unrelated and irrelevant certified question of "what showing of 'value' under TUFTA is sufficient for a transferee to prove the elements of the [good faith] affirmative defense?"  *Janvey v Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016). In *Janvey*, the Texas Supreme Court made the non-controversial statement that TUFTA operates to prevent debtors from defrauding creditors by placing their assets beyond reach, but also provides affirmative defenses of good faith and reasonably equivalent value to the transferees, whether initial or subsequent.  *Id.* at 573 and n.68. The Texas Supreme Court did not address whether claims against subsequent transferees are statutorily barred by the language of Section 24.009(a).

Edelstein's argument is also contrary to TUFTA's language and intent. Section 24.009(a) says, "A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent

4

transferee or obligee." Edelstein argues that this section provides a complete defense to subsequent transferees when the initial avoidance stems from actual fraud. The correct reading of Section 24.009(a) is that a plaintiff cannot avoid and recover a transfer under Section 24.005(a)(1) where the subsequent transferee received its transfer from a prior transferee that has established each element of the statutory defense. *See, e.g.*, *McConkie v. Rice Properties*, 2012 WL 2120066, at *4 (D. Utah June 11, 2012) (Applying Texas law: "Therefore, Section 24.009(a) must only be referring to subsequent transferees of initial transferees that take 'in good faith and for a reasonably equivalent value.'"); *In re Sexton*, 166 B.R. 421, 427 (Bankr. N.D. Cal. 1994) ("Moreover, the Court understands section 3439.08(a) to provide a defense to a subsequent transferee only if its transferor (or someone earlier in the transfer chain) received its transfer in good faith and for reasonably equivalent value."); *Town of Nottingham v. Bonser*, 146 N.H. 418, 427, 777 A.2d 851, 858 (2001) ("According to the plain language of both versions of the statute to enjoy the protected status of 'subsequent transferee,' one must obtain the property from an owner who has paid fair consideration without knowledge of any fraud.") (internal citations omitted); *Wheeler Bros. Inc. v. Jones*, 167 F.Supp.3d 1283, 1298 (M.D. Ala. 2016) (concluding that to be protected, the subsequent transferee must have taken from a good faith transferee); *E. Sav. Bank v. Bucci*, 2008-Ohio-6363, ¶ 83 (Ohio Ct. App. 2008) (holding same).

In *McConkie*, a federal district court expressly rejected Edelstein's argument. There, like Edelstein here, the defendants argued that TUFTA Section 24.009(a) creates an absolute defense for subsequent transferees. *McConkie*, 2012 WL 2120066, at *4. The court reasoned that reading TUFTA's Section 24.009(a) in that way would make Section 24.009(b)(2) superfluous. *Id.* Thus, the court held that Section 24.009(a) applies only to a subsequent transferee who takes from an initial transferee that has established the statutory defenses. *Id.*

In *Muse Family Enterprises, Ltd. v. BTM Funding, Inc.*, the court interpreted identical language in California's Uniform Fraudulent Transfer Act, 2014 WL 4840667, at *5 (Cal. Ct. App. Sept. 30, 2014). In that case, the defendants, again like Edelstein here, argued that California's Section 3439.08(a)[2] provided a complete defense to avoidance actions for subsequent transferees. *Id.* Citing several other courts that have similarly interpreted Uniform Fraudulent Transfer Acts, the *Muse Family* court rejected the defendants' interpretation of Section 3439.08(a) and held that to receive the provision's protection the subsequent transferees must have taken from a good faith transferee. *Id.*

The *Muse Family* court also noted that accepting the defendants' interpretation would allow fraudsters to thwart creditors by transferring immediately any assets that had been fraudulently transferred and putting the funds outside the reach of the creditors. *Id.* Such a reading would severely hinder creditors' abilities to recover funds that been fraudulently transferred. This Court should not construe TUFTA in a way that would so negatively impede creditors from recovering fraudulently transferred assets. *See Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1351 (5th Cir.1980) ("[R]emedial legislation . . . must be construed broadly and liberally so as to effectuate the legislature's remedial purpose.").

This Court should reach the same result here. Edelstein's reading of Section 24.009(a) would contradict Section 24.009(b)(2), which plainly allows the Trustee to recover against subsequent transferees.  Moreover, applying Edelstein's logic to Section 24.009(b)(2) would lead to absurd results.  If the Court were to read Section 24.009(b)(2) as Edelstein urges the Court to

---

[2] California's section 3439.08(a) is identical to Texas's Section 24.009(a). *Compare* CA Civ. Code § 3439.08, subd. (a) ("A transfer or an obligation is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.") *with* Section 24.009(a) ("A transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.").

read Section 24.009(a), then TUFTA would allow a creditor to recover from any subsequent transferee other than a subsequent transferee. Such a reading would make no sense. The plain meaning of Section 24.009(b)(2) is that a creditor cannot recover from a good faith transferee or a subsequent transferee of such good faith transferee. This same reading should be applied to Section 24.009(a): a creditor cannot avoid a transfer against a good faith transferee or a subsequent transferee of such good faith transferee.

TUFTA Section 24.012 also explicitly states that TUFTA should be "applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." Adopting the Trustee's reading of Section 24.009(a), and rejecting Edelstein's interpretation, would better effectuate TUFTA's purpose to protect creditors from fraudulent transfers and would uniformly interpret the act in line with the statue's purposes and intent, and case law from other states interpreting the same or similar statutory language.

The interpretation of Section 24.009(a) that Edelstein asserts goes against the statute's plain meaning, has been rejected by the courts that have addressed it, and contradicts TUFTA's remedial purpose. The Court should deny Edelstein's motion on this point.

**D.     Under both TUFTA and § 550, Edelstein bears the burden to plead and prove his affirmative defenses.**

Edelstein challenges the Complaint's claims of constructive fraud under TUFTA and § 550, , arguing the Trustee did not plead adequately that  Edelstein was an insider and that Edelstein lacked good faith, knowledge of voidability, or failure to provide value in connection with his receipt of Black Elk funds. Mot., at 8-11; 11-12. But these are not elements of the Trustee's claims against Edelstein.  This Court rejected the same argument asserted by the Meridian Capital (RZH) defendants. *See Schmidt v. Meridian Capital Foundation*, Adv. No. 19-

882351.5

3330, Dkt. No. 49, at 13-14. Edelstein has the burden of pleading and proof. *Id.* Thus, Edelstein's challenges to the Complaint on these bases fail and his motion should be denied.

In its memorandum opinion in the RZH adversary proceeding, the Court held that, where the Trustee had adequately pleaded that RZH was liable as a subsequent transferee, "RZH's affirmative defenses under § 550(b)" were "premature at the motion to dismiss stage." *Id.* This holding should also govern this case. Here, the Trustee has adequately pleaded that Edelstein is liable as a subsequent transferee, Compl., ¶¶ 9-20 (describing Platinum's scheme to redeem preferred equity ahead of the Noteholders); ¶¶ 191-214 (alleging the initial transfers are voidable); ¶ 89 (alleging that Edelstein received money comprised of Black Elk funds), and the Court should not grant a motion to dismiss based on Edelstein's affirmative defenses under § 550(b).[3] The Trustee has met his burden, which Edelstein does not even challenge, and the Motion should be denied.

As this Court has noted, a plaintiff is not required to plead facts negating a defendant's possible affirmative defenses. *Schmidt v. Meridian Capital Foundation*, Adv. No. 19-3330, Dkt. No. 49, at 13-14; *see also Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex. Inc.*, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010). The exception to this rule is that courts may grant a 12(b)(6) motion based on an affirmative defense only when "a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986); *see also In re Bernard L. Madoff Inv. Sec., LLC*, 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010) ("In addition, this doctrine has been applied to dismiss complaints establishing only clear-cut, complete affirmative defenses such as absolute immunity or the statute of limitations; 'defenses that require a factual review to be established ... should not support a dismissal.'").  In

---

[3] It is not an element of the subsequent transferee claims that Edelstein have knowledge of Platinum's fraudulent scheme or was an insider.

this case, there are no facts in the Complaint that "clearly" demonstrate a successful affirmative defense as a matter of law.

Courts typically refuse to dismiss complaints based on an alleged failure to overcome affirmative defenses, like good faith, at the pleading stage. *See In re Dreier LLP*, 452 B.R. 391, 426 (Bankr. S.D.N.Y. 2011) ("Whether the Defendants took the transfers in good faith is a factual question that may not be determined on the face of the Complaint."); *Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) ("Whether Nancy and Nadine took those monies in good faith and for value are issues to be raised by them as affirmative defenses to the Trustee's recovery, and need not be negated by the Trustee in the Complaint."). Affirmative defenses such as good faith, knowledge of voidability, and reasonably equivalent value are fact-intensive issues that cannot be resolved on the face of a complaint. *See, e.g.*, *In re Madoff*, 440 B.R. at 256 ("The element of good faith under section 548(c) of the Code, bearing upon a transferee's motivations, is 'indisputably a factual question' that 'may not be determined on the face of [a] complaint.'").

However, should the Court determine that the Complaint must plead facts relating to Edelstein's § 550(b) defenses, the Complaint adequately does so.[4] Edelstein did not take in good faith and was on notice regarding the voidability of the transfers. Compl., ¶¶ 52-75, 118-19, 134-36, 139, 145-52, 154-55, 157-59, 163-66, 167, 170-73, 176-79. Edelstein also cannot establish that he took for value because his redemption was based on an equity interest. Compl., ¶¶ 173, 178, 186, 190. Moreover, Black Elk did not owe any debt to Edelstein as an investor in PPBE, nor has Edelstein "surrendered" any claim against either Platinum or PPBE. These affirmative defense arguments require pleading by Edelstein, discovery, and a factual determination of

---

[4] For a more fulsome explanation of why the Complaint negates any affirmative defense, see the Trustee's Opposition to the Motion to Dismiss of Defendant Leon Meyers (Dkt. 51), at Section III(D).

whether Edelstein has any surrendered any fraud claim against Black Elk that would constitute any "value."[5]

### IV.     Conclusion

Because Edelstein is a proper party, can be liable as a subsequent transferee, and cannot carry his burden of establishing his affirmative defenses at this stage in the litigation, the Court should deny his motion to dismiss.

Respectfully submitted,

SMYSER KAPLAN & VESELKA, L.L.P.

By: _/s/  Craig Smyser_
    Craig Smyser
    Attorney-in-Charge
    Texas Bar No. 18777575
    Fed. Bar No. 848
    700 Louisiana, Suite 2300
    Houston, Texas 77002
    713-221-2300
    713-221-2320 (fax)
    csmyser@skv.com

---

[5] Contrary to Edelstein's assertions, the facts pled are legally sufficient for inquiry notice and are not properly resolved on a motion to dismiss. *See Hahn v. Love*, 394 S.W.3d 14, 31 (Tex. App.—Houston [1st Dist.] 2012, pet denied.) (actual or constructive notice); *In re Southmark*, 239 F.3d 365, at *6 (5th Cir. 2000) (SEC filings and media reports sufficient notice); *In re Juliet*, 2013 WL 5674398, at *6 (Bankr. S.D. Tex. Oct. 17, 2013) (reasonable person standard for notice of "debtor's financial condition" or "operated with a fraudulent purpose"); *In re Wolf*, 2016 WL 4940198, at *36 (Bankr. W.D. Tex. Sept. 15, 2016) aff'd 697 F. App'x 317 (5th Cir. 2017) (transferee affirmative defenses are "a question of fact").

882351.5

OF COUNSEL:

SMYSER KAPLAN & VESELKA, L.L.P.
Jeff Potts
Texas Bar No. 00784781
Fed. Bar No. 16504
Justin Waggoner
Texas Bar No. 24003122
Fed. Bar No. 23098
700 Louisiana, Suite 2300
Houston, Texas 77002
713-221-2300
713-221-2320 (fax)
jpotts@skv.com
jwaggoner@skv.com

OKIN ADAMS LLP
Matthew Okin
Texas Bar No. 00784695
Fed. Bar No. 15204
David Curry, Jr.
Texas Bar No. 24065107
Fed. Bar No. 975482
1113 Vine St., Suite 201
Houston, Texas 77002
713-228-4100
888-865-2118
mokin@okinadams.com
dcurry@okinadams.com

**ATTORNEYS FOR TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing opposition was served on counsel for Defendants in accordance with Rule 7005 of the Federal Rules of Bankruptcy Procedure on the 21st day of August, 2019.

*/s/  Jeff Potts*
Jeff Potts

11

882351.5