

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
02/01/2021

| | | |
|---|---|---|
| IN RE: | § | |
| **BLACK ELK ENERGY OFFSHORE** | § | **CASE NO: 15-34287** |
| **OPERATIONS, LLC,** *et al*, | § | |
| Debtors. | § | **CHAPTER 11** |
| | § | |
| **RICHARD SCHMIDT,** | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-3459** |
| | § | |
| **BERNARD FUCHS,** *et al*, | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Through this adversary proceeding, the Trustee seeks to recover fraudulent transfers or preferences paid to various Defendants who owned equity in the Debtor, Black Elk Energy Offshore Operations, LLC ("Black Elk"). The Trustee alleges that Black Elk and its largest interest holder devised a scheme to sell assets and divert the proceeds from secured lenders to equity holders. The Trustee argues that the Defendant equity holders are liable as subsequent transferees who received proceeds from avoided transactions. Certain Defendants moved to dismiss, arguing that the complaint establishes that they accepted the transfers in good faith, for value, and without knowledge of the scheme. The Defendants also seek dismissal of the Trustee's claims for punitive damages and attorneys' fees. For the reasons that follow, the motions to dismiss are denied in part and granted in part.

## BACKGROUND[1]

Black Elk was an oil and gas company headquartered in Houston, Texas. Established in 2007, Black Elk purchased and reworked abandoned oil and gas properties in the Gulf of Mexico. To fund its operations, Black Elk issued $150,000,000.00 in Senior Secured Notes. Black Elk granted the Senior Noteholders a first priority lien covering the majority of its assets.

Richard Schmidt ("Trustee"), the Trustee of the Black Elk Litigation Trust filed an adversary complaint seeking to avoid and recover certain pre-petition transfers. The Defendants[2] each invested in Platinum Partners Black Elk Opportunities Fund LLC ("PPBEO") and Platinum Partners Black Elk Opportunities Fund International LLC ("PPBEOI") (collectively, "the PPBE Funds"). The Trustee alleges that the Defendants received over $17,000,000.00 in proceeds from a fraudulent scheme to repurchase and distribute Black Elk's Series E preferred equity.

Platinum Partners Value Arbitrage Fund LP, Platinum Partners Credit Opportunities Master Fund LP, Platinum Partners Liquid Opportunity Master Fund LP, PPVA Black Elk (Equity) LLC, and PPBE (collectively, "Platinum") became Black Elk's controlling investors in 2009. (ECF No. 1 at 5). The Trustee alleges that Platinum effectively controlled Black Elk.

On November 16, 2012, an explosion occurred on one of Black Elk's offshore drilling platforms in the Gulf of Mexico. (ECF No. 1 at 5). Three workers lost their lives. (ECF No. 1 at 5). The impact of the disaster, as well as an unfavorable downturn in market conditions, caused Black Elk's business to suffer. (ECF No. 1 at 5).

---

[1] This Background section is drawn from the allegations found in the complaint. The Court does not make any factual determinations at this time.

[2] The Defendants are Bernard Fuchs, Leon Meyers, Meadows Capital LLC, Golda Wilk, Shloime Wagschal, Dresden Investments Ltd., the estate of Marcos Katz, Adela Katz, Bernard W. Edelstein, Perl Equity Holdings LLC, Sheldon Perl, and Legacy Investment Partners LLC.

In response to those headwinds, Platinum, along with certain Black Elk executives, created the two PPBE Funds.  The PPBE Funds then purchased Black Elk's Series E preferred equity, which was subordinate to Black Elk's Senior Notes.  (ECF No. 1 at 5).  Despite that cash infusion, the complaint alleges that both Black Elk and Platinum became insolvent in 2014.  (ECF No. 1 at 6).  At that time, Platinum was the largest investor in Black Elk.  Platinum controlled Black Elk's credit facility, held a majority of the Senior Notes, and the Series E preferred equity.  (ECF No. 1 at 6).  Platinum also controlled a majority of the Board of Managers, and appointed Black Elk's chief financial officer.  (ECF No. 1 at 6).

As Black Elk's financial outlook became more dire, the Trustee alleges that Platinum devised a plan to enrich itself and its investors at the expense of Black Elk's other debtholders.  Black Elk first sold many of its prime assets to Renaissance Offshore, LLC ("the Renaissance Sale").  (ECF No. 1 at 6).  The Senior Noteholders' lien should have attached to the sale proceeds.  However, instead of using the sale proceeds to pay down its debt, Black Elk improperly redeemed the Series E preferred equity.  (ECF No. 1 at 6).  As a result, Platinum and its investors received the sale proceeds, while retaining their Secured Notes in anticipation of a bankruptcy filing.  (ECF No. 1 at 7).

The Senior Noteholders were entitled to first call of the sale proceeds.  (ECF No. 1 at 6).  However, "Platinum implemented a scheme to fraudulently claim that a majority of unaffiliated and disinterested holders of [Secured Notes] voted to allow Platinum the ability to transfer proceeds of the Renaissance Sale to Platinum and for Platinum's benefit by redeeming the Series E preferred equity ahead of the Notes."  (ECF No. 1 at 7).  Amendment of the Secured Notes required a majority vote of the disinterested Noteholders.  (ECF No. 1 at 7).  Platinum was not disinterested because it held substantial equity in Black Elk.  (ECF No. 1 at 7).  The complaint

alleges that truly disinterested noteholders would have never supported the amendment because the amendment released the noteholders' liens on Black Elk's most valuable assets for no consideration.  (ECF No. 1 at 8).

To overcome the voting issue, Platinum allegedly manufactured a group of consenting noteholders led by certain Beechwood entities.  In 2014, Beechwood purchased $37,000,000.00 in Senior Notes.  (ECF No. 1 at 8).  Platinum and its insiders controlled Beechwood, but failed to disclose that control.  This allowed Beechwood to pose as a disinterested Noteholder and vote on the amendment.  (ECF No. 1 at 9).  Beechwood voted in favor of the amendment.  (ECF No. 1 at 9).

As a result, the amendment passed and Black Elk was able to divert nearly $100,000,000.00 of Renaissance Sale proceeds to Platinum and then the PPBE Funds.  (ECF No. 1 at 9).  The initial transfers went to various Platinum entities between August 18, 2014 and August 21, 2014.  Those entities then transferred the proceeds to the PPBE Funds.  The PPBE Funds then paid the Defendants.  The Trustee claims that the Defendants in the present adversary proceeding received $17,261,590.57 of the Renaissance Sale proceeds.  (ECF No. 1 at 9).

On August 11, 2015, three creditors initiated an involuntary chapter 7 bankruptcy proceeding against Black Elk.  (ECF No. 1 at 11).  Black Elk consented to the Order for Relief and the Court converted the case to one under chapter 11.  (ECF No. 1 at 11).  The Court confirmed Black Elk's Third Amended Plan of Liquidation on June 20, 2016.  (ECF No. 1 at 12).  The Plan established the Black Elk Litigation Trust in order to recover preferential and fraudulent transfers.  (ECF No. 1 at 12).

On October 26, 2016, the Trustee brought a case (Case No. 16-3237) against PPVAF, PPCO, PPLO, and PPVA Equity (all Platinum entities) relating to the fraudulent transfers.  On

August 31, 2017, the Trustee brought another adversary proceeding (Case No. 17-3380) against the PPBE Funds relating to the fraudulent transfers. (ECF No. 1 at 12). Both PPBE Funds defaulted, and the Court entered a judgment against them on June 29, 2018 in the amount of $32,802,572.16 (PPBEO) and $39,022,229.15 (PPBEOI). (ECF No. 1 at 12). The Trustee alleges that the Defendants in this proceeding received subsequent transfers from the PPBE Funds.

The Trustee filed this adversary proceeding on May 8, 2019. Count I alleges that the Defendants received fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A). (ECF No. 1 at 74). Count II alleges fraudulent transfers under 11 U.S.C. § 548(a)(1)(B). (ECF No. 1 at 74). Count III alleges preferences under 11 U.S.C. § 547. (ECF No. 1 at 75). Count IV alleges violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). (ECF No. 1 at 76). Count V seeks to recover the avoided transfers under 11 U.S.C. § 550. (ECF No. 1 at 78). The Trustee later clarified that he only seeks recovery based on the Defendants' status as subsequent transferees under § 550 and TUFTA. Three defendants moved to dismiss under Rule 12(b)(6). (*See* ECF Nos. 34, 56, 58, 70).

Defendant Leon Meyers moved to dismiss the complaint for failure to state a claim (ECF No. 34). Mr. Meyers argues that the TUFTA and recovery claims fail because he was a subsequent transferee who took in good faith. Myers claims his good faith defense is established on the face of the complaint. Bernard Edelstein also moved to dismiss. (ECF No. 56). The Edelstein Motion joins in the arguments contained in the Meyers Motion. (*See generally* ECF No. 56). Meadows Capital, LLC filed its own motion to dismiss, which joins in the arguments found in the Meyers and Edelstein Motions. (ECF No. 58 at 5). Defendants Ditmas Park Capital, LP and Rockwell Fulton Capital, LP joined in the motions to dismiss, but did not file a separate motion. (ECF No. 73).

After the motions were fully briefed, the Court heard oral argument and took the matters under advisement.  Additionally, at the oral argument, the Defendants moved to strike six attachments which the Trustee included in his response to the Meadows Motion.  The attachments include motions, orders of this Court, and a transcript from the Trustee's adversary case against PPBE, as well as a published bankruptcy decision from the Bankruptcy Court for the Southern District of New York.  (*See* ECF No. 84 at 1).

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.  This proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(F).

## LEGAL STANDARD

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007).  However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet the pleading requirements set out in Fed. R. Civ. P. 8(a)(2).  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct."  556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] complaint

does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotations omitted).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements.  Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud.  Fed. R. Civ. P. 9(b); *see Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court dismissal of fraud claims where plaintiff failed to allege when a fraudulent sales charge was incurred or the extent of plaintiff's damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding plaintiff allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2012)).

A motion under Rule 12(b)(6) will be treated as one for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the court.  Fed. R. Bankr. P. 7012(b).  Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  In the event a motion to dismiss is converted to one for summary judgment, a court must first give the parties notice and then may consider all evidence presented.  *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

## DISCUSSION

The Defendants argue that dismissal is warranted because the complaint establishes that they accepted the Renaissance Sale proceeds for value, in good faith, and without knowledge that the initial transfers were avoidable.  Further, the Defendants claim the allegations in the complaint cannot support an award of punitive damages or attorneys' fees.  At the oral argument, Defendant Meadows Capital, LLC orally objected to the Trustee's inclusion of six exhibits in response to the Meadows Motion to Dismiss.  The Court begins by determining the oral motion to strike, and then decides whether dismissal is appropriate.

### a.  The Oral Motion to Strike is Denied

When considering a motion to dismiss under Rule 12(b)(6), a court may consider "documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."  *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  Additionally, a court may consider "matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A bankruptcy court may take judicial notice of orders entered in the bankruptcy case.  *See In re Superior Air Parts, Inc.*, 486 B.R. 728, 732 n.1 (Bankr. N.D. Tex. 2012).  A court may also take judicial notice of matters in the public record.  *Murchison Cap. Partners, LP v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015).

The Court may properly consider all six attachments at the motion to dismiss stage.  Five of the six attachments are docket entries from the Trustee's adversary proceeding against Platinum and the PPBE Funds (Case Nos. 16-3237 and 17-3380) before this Court.  The sixth attachment is a published judicial opinion from another bankruptcy court.

Neither PPBE Fund responded to the Trustee's suit and the Court entered a default judgment in favor of the Trustee.  The first attachment is the Trustee's Motion for Entry of Default Judgment in the Platinum case.  (ECF No. 66-1).  The second attachment is the Court's Order for Interlocutory Default Judgment in the Platinum case.  (ECF No. 66-2).  The third attachment is the Court's Order for Default Judgment against the PPBE Funds.  (ECF No. 66-3).  The first three attachments are referenced in the complaint.  (ECF No. 1 at 12).  The fourth attachment is a transcript of the Court's September 20, 2018 hearing on the Interlocutory Default Judgment in the Platinum case.  (ECF No. 66-4).  The fifth attachment is a transcript of the Court's June 27, 2018 hearing on the Default Judgment in the PPBE Funds case.  (ECF No. 66-5).  The sixth attachment is a copy of *Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012).  (ECF No. 66-6).

The first three attachments may be considered because they are referenced in the complaint, and two of the three are orders of this Court.  One is a motion, also referenced in the complaint, which is not considered for the truth of any factual assertion in the motion.  Paragraphs 42 and 43 of the complaint reference the first three attachments.  (ECF No. 1 at 12).  Those three attachments are pleadings and orders from the Black Elk bankruptcy and related adversary proceedings, which are in the public record.  Accordingly, the Court may take judicial notice of those attachments. Because the first three attachments are both referenced in the complaint and matters of which the Court may take judicial notice, the attachments may be considered when deciding a Rule 12(b)(6) motion to dismiss.

The fourth and fifth attachments are hearing transcripts, and the Court may consider them because the Court may take judicial notice of them.  Courts frequently take judicial notice of hearing transcripts.  *See*, *e.g.*, *In re Jetstar Partners, Ltd.*, 2013 WL 365111, at *1 (Bankr. N.D.

Tex. Jan. 29, 2013).  Because the Court may take judicial notice of the transcripts, the Court may consider the transcripts when deciding the motions to dismiss.  Although the Court admits the transcripts, unsupported allegations of counsel or hearsay statements within the transcripts will not be considered.

The final attachment is a copy of a published judicial opinion.  The Court may always consider relevant case law.  *See*, *e.g.*, *Harris v. Davis*, 2016 WL 3543300, at *7 n.105 (S.D. Tex. June 29, 2016).

### b.  *The Complaint Establishes Causes of Action Against the Defendants*

The complaint does not allege that the Defendants received the Renaissance Sale proceeds as initial transferees.  Rather, the Trustee seeks to establish that the Defendants are liable as subsequent transferees.  The initial transfers were made to Platinum or to the PPBE Funds, who then distributed the proceeds from the Series E preferred equity redemption to the Defendants. The Trustee previously obtained default judgments against the relevant Platinum entities as well as the PPBE funds.  (ECF No. 66-3).

When a transfer is avoided as a preference or fraudulent transfer, a trustee may recover from "any immediate or mediate transferee of [an] initial transferee."  11 U.S.C. § 550(a)(2).  "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transfer."  *Picard v. Legacy Cap. Ltd. (In re Bernard L. Madoff Inv. Sec., LLC)*, 548 B.R. 13, 35 (Bankr. S.D.N.Y. 2016).  Whether Rule 9(b)'s heightened pleading standard applies to fraudulent transfer claims remains undecided under Fifth Circuit precedent.  *Life Partners Creditors' Tr. v. Crowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 118 (5th Cir. 2019).  To the extent that the Trustee alleges that any initial transfers

are avoidable for fraud, the Court will apply the heightened standard found in Rule 9(b). *Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, 552 B.R. 165, 167 (S.D. Tex. 2016).

The Trustee obtained default judgments in avoidance actions against Platinum and the PPBE Funds. Thus, the Trustee has avoided the initial transfers. If a complaint against subsequent transferees requires pleading initial transferee liability, even after avoidance of the initial transfers, this complaint does so. The complaint alleges facts sufficient to establish Platinum or the PPBE Funds received initial fraudulent transfers. The complaint sets forth facts supporting Platinum and the PPBE Funds' liability under § 548(a)(1)(A), (a)(1)(B), and TUFTA.

### 1. *Actual Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(A) and TUFTA*

In order to establish the liability of a subsequent transferee, courts in this district have not decided whether a trustee must satisfy Rule 9(b)'s heightened pleading standard when alleging fraud as to the initial transferee. Whether or not a court must apply Rule 9(b), this complaint satisfies that Rule's requirements. The Trustee's claims under § 548 and TUFTA are based on actual fraud committed by Platinum and Black Elk. Those allegations form one basis of the Defendants' subsequent transferee liability. The complaint adequately pleads fraud by Platinum and Black Elk in accordance with Rule 9(b).

Section 548(a)(1)(A) permits avoidance of a fraudulent transfer when: (i) the debtor had an interest in property; (ii) a transfer of the interest occurred within one year of the bankruptcy filing; and (iii) the transfer was made with actual intent to hinder, delay, or defraud future creditors. 11 U.S.C. § 548(a)(1)(A); *see In re Life Partners Holdings*, 926 F.3d at 117.

The Trustee pleads facts that allege actual fraudulent transfers, including the who, what, when, where, and why required under Rule 9(b). *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). The Trustee alleges that Platinum and Black Elk hatched a scheme to

divert $98,000,000.00 of Renaissance Sale proceeds to the holders of Series E preferred equity. Black Elk had an interest in the Renaissance Sale proceeds. Seventeen million dollars of that money made its way to the Defendants, via the PPBE Funds.

The initial transfers from Black Elk to Platinum and the PPBE Funds occurred within one year of the involuntary bankruptcy petition. Black Elk received the sale proceeds from Renaissance on August 15, 2014. (ECF No. 1 at 41). Between August 18 and 21, 2014, Black Elk transferred funds to a number of different Platinum entities. (ECF No. 1 at 44). "Although the first set of funds were transferred at Platinum's direction from Black Elk to the Platinum entities PPVAF, PPCO, PPVA Equity and PPLO, those entities [] then immediately transferred the funds to PPBE (also controlled by Platinum []). The Platinum entities, all under the same control and ownership, are one and the same -- alter egos of one another." (ECF No. 1 at 45). The involuntary petition was filed less than one year later, on August 11, 2015.

Finally, the Trustee sets out in detail a scheme where Platinum fraudulently tipped the scales of the Senior Note amendment vote in order to benefit Platinum's own Series E preferred equity interests. (*See generally* ECF No. 1 at 33-46). Those allegations, if true, show that Black Elk made the initial transfers with the intent to hinder, delay, or defraud Senior Noteholders by enriching junior shareholders.

An actual fraudulent transfer under TUFTA requires: (i) a creditor; (ii) a debtor; (iii) a transfer of assets by the debtor shortly before or after the creditor's claim arose; and (iv) actual intent to hinder, delay, or defraud any creditor. *In re Life Partners Holding*, 926 F.3d at 117 (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204-05 (Tex. App.—Houston 2014)).

The elements of a TUFTA claim are satisfied here. The complaint identifies Black Elk as the debtor and the Senior Noteholders (as well as trade vendors) as creditors. The complaint states that the initial transfers were made shortly after the redemption of Series E preferred equity, at the expense of the Senior Noteholders. As explained, the complaint contains ample detail explaining Black Elk and Platinum's alleged scheme to hinder, delay, or defraud creditors.

2.   *Constructive Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B) and TUFTA*

Under 11 U.S.C. § 548(a)(1)(B), a constructive fraudulent transfer is: (i) a transfer of the debtor's property; (ii) made within two years of the petition date; (iii) in which the debtor received less than reasonably equivalent value; and (iv) where the debtor was insolvent at the time of the transfer. *Floyd v. Option Mortgage Corp.* (*In re Supplement Spot, LLC*), 409 B.R. 187, 199 (Bankr. S.D. Tex. 2009). Similarly, a constructively fraudulent transfer is avoidable under TUFTA if: (i) the transfer was made without the debtor receiving reasonably equivalent value; (ii) the debtor was insolvent at the time of the transfer; (iii) a creditor exists whose claim arose before the transfer for whom the trustee may act; and (iv) the cause of action arose within four years of the transfers. Tex. Bus. & Comm. Code § 24.006(a); *West v. Hsu (In re Advanced Modular Power Sys.)*, 413 B.R. 643, 676 (Bankr. S.D. Tex. 2009).

The complaint alleges that Black Elk transferred nearly $100,000,000.00 of Renaissance proceeds to Platinum after the Series E preferred equity redemption. The Court previously explained that those initial transfers occurred within one year of the Black Elk bankruptcy.

A debtor transfers an interest for reasonably equivalent value when the debtor "received value that is substantially comparable to the worth of the transferred property," judged from the perspective of other creditors. *Stanley v. U.S. Bank N.A. (In re TransTexas Gas Corp.)*, 597 F.3d 298, 306 (5th Cir. 2010). The Trustee claims that Black Elk and Platinum sold Black Elk's most

valuable assets and then diverted the proceeds to junior interest-holders. Further, the transactions occurred while Black Elk was insolvent. Those allegations, taken as true, suggest that the Series E preferred equity was not worth the redemption price. Thus, the transfers were not made for reasonably equivalent value. The Trustee adequately alleges that the initial transfers were constructively fraudulent under § 548(a)(1)(B) and TUFTA.

### 3. *Subsequent Transfers Under 11 U.S.C. § 550 and TUFTA*

The complaint alleges that the Defendants are liable to the Trustee because the Defendants received proceeds from avoidable transfers. When a transfer is avoided under § 548, § 550(a)(2) allows the Trustee to recover the transfer from any immediate or mediate transferee. Not only does the complaint allege that the initial transfers were avoidable, the Trustee has successfully avoided the initial transfers. Section 550(b)(1) provides a defense to recovery when a transferee "takes for value . . . in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). The Defendants press that dismissal is necessary because the complaint establishes a § 550(b)(1) defense. The complaint establishes no such thing. The Defendants' argument muddies the pleading waters by requiring that the Trustee disprove an affirmative defense. The Trustee's burden at the pleading stage is to put forth a "short and plain statement of the claim showing that the pleader is entitled to relief," not to shadowbox anticipated defenses. *See* Fed. R. Civ. P. 8(a)(2).

As previously explained, the Trustee avoided the initial transfers, and the complaint also sets out in detail why the initial transfers were avoidable. The complaint also alleges that the Defendants received Renaissance Sale proceeds from Platinum. Those allegations show that the Defendants were immediate or mediate transferees of avoidable transfers. That is all that the Trustee must plead to assert a cause of action under § 550(a)(2).

"Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, N.A.*, 467 F.3d 466, 470 (5th Cir. 2006). Section 550(b)(1) creates an affirmative defense against a trustee's recovery action. *E.g.*, *In re Black Elk Energy Offshore Operations, LLC*, 2019 WL 3889761, at * 6 (Bankr. S.D. Tex. Aug. 16, 2019). A defendant bears the burden of proving a § 550(b)(1) defense.[3] *E.g.*, *In re Still*, 963 F.2d 75, 76 (5th Cir. 1992) ("Thus, the [transferee] must satisfy all four requirements of § 550(b)(1) to withstand the Trustee's avoidance power."); *see also Meoli v. Huntington Nat'l Bank*, 848 F.3d 716, 729 (6th Cir. 2017).

In *EPCO*, the Fifth Circuit reversed dismissal of a breach of contract complaint. 467 F.3d at 470. The defendant asserted a statute of frauds defense, claiming the complaint failed to allege the existence of a signed written agreement or an electronic acceptance of the agreement. *Id.* However, the Fifth Circuit noted that even though the complaint did not specifically plead that the parties had a signed written document or that the plaintiff accepted electronically, "neither of [those] factual scenarios is foreclosed by the face of EPCO's pleadings, so dismissal at this early stage was improper." *Id.* at 471.

*EPCO* illustrates the high bar that a defendant must hurdle to show an affirmative defense on the face of a complaint. In *EPCO*, the affirmative defense involved the straightforward factual question of whether the parties had a signed written agreement. Here, the Defendants' § 550(b)(1) defense involves facts that are less concrete, including whether the Defendants' knew of the transfers' voidability. The complaint does not facially establish a § 550(b)(1) defense.

---

[3] The Defendants cite *Holt v. FDIC (In re Inv. Sales & Serv., Inc.)*, 99 B.R. 742 (Bankr. W.D. Tex. 1987), as authority placing the burden on a trustee. The Court agrees with and is bound by the Fifth Circuit authority found in *In re Still*.

The complaint goes beyond the pleading requirements by suggesting that some Defendants had close relationships with Platinum's principals.  In the Defendants' eyes, because those allegations are not sufficient to prove that the Defendants acted in bad faith, the Defendants' good faith is evident on the face of the complaint.  However, there is a fine line between a complaint that fails to prove bad faith and a complaint that (taking all allegations as true) shows the Defendants received the transfers in good faith, for value, and without knowledge of voidability. *See* 11 U.S.C. § 550(b)(1).  The facts in this complaint do not show the latter.

The Defendants also contend that because the Trustee alleges a lack of good faith, the Trustee opened the door to dismissal based on the good faith defense.  (*See* ECF No. 78 ay 7-8).  In essence, the argument suggests that when a Trustee pleads facts relating to an affirmative defense, the complaint must plausibly show the affirmative defense does not apply.  This argument lacks any basis in the Federal or Bankruptcy Rules and requires that plaintiffs preemptively disprove affirmative defenses.  This proposed burden shifting elevates pleading standards far above the requirements of Rule 8(a).  Moreover, the Defendants' view creates a perverse opportunity for future defendants who receive subsequent fraudulent transfers in bad faith.  If a trustee merely pleads that a subsequent transferee received an avoidable transfer, an honest transferee has no argument favoring dismissal.  Yet, when a trustee pleads that a subsequent transferee received an avoidable transfer in bad faith, the dishonest transferee may succeed on a motion to dismiss.  This Court declines to craft a novel pleading rule benefitting parties accused of misconduct.

The face of this complaint does not show that the Defendants received the transfers for value, in good faith, or without knowledge of voidability.  The complaint does not prove that the Defendants' received the Renaissance Sale proceeds for value.  "[W]hether an exchange was made

for reasonably equivalent value is evaluated objectively at the time of the transfer." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 574 (Tex. 2016) (recognizing TUFTA definition of 'value' is based on Bankruptcy Code definition of the term). The Defendants argue that the complaint shows they took for value because the Defendants initially purchased Series E preferred equity. Thus, the redemption provided value in return for the Defendant's equity investments. However, this argument ignores the *Janvey* requirement that value be determined at the time of the transfer. The complaint adequately alleges that Black Elk was insolvent when the Renaissance Sale proceeds were transferred. Those factual allegations suggest that at the time of the transfers, the preferred equity was nearly valueless, in which case the Defendants gave no value. *See Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006) ("The primary consideration in analyzing the exchange for value for any transfer is the degree to which the transferor's net worth is preserved.").

The Defendants also contend that the transfers provided value for their restitution claims as victims of a "Ponzi scheme like fraud." (ECF No. 78 at 9-10). Ponzi scheme victims are entitled to restitution claims. *E.g.*, *In re AFI Holdings, Inc.*, 525 F.3d 700, 708 (9th Cir. 2008). Restitution claims arise when a victim invests in an existing scheme. *Id.* However, the Platinum scheme alleged by the Trustee is distinguishable from a typical Ponzi scheme. From its inception, a Ponzi scheme is a house of cards, doomed to fail. The Trustee alleges that Black Elk was a legitimate, albeit failing, business. Anticipating its failure, Platinum devised a scheme to enrich itself by raiding Black Elks' assets, at the expense of Senior Noteholders. The complaint alleges that the Defendants participated in the Series E offering, through the PPBE Funds, at some point in early 2013. (ECF No. 1 at 51). The Platinum scheme depended on the Series E redemption and use of the PPBE Funds. However, the complaint does not allege that the PPBE Funds were created to perpetuate the scheme. Nor does it claim that Black Elk initially issued the Series E preferred

equity as part of the scheme.  On the contrary, the complaint suggests the scheme was not devised until early 2014.  (See ECF No. 1 at 56).  Unlike a Ponzi scheme, this complaint does not show that the Defendants held restitution claims when they initially invested.  The Court cannot say, from the face of the complaint, that the Defendants received Renaissance Sale proceeds in satisfaction of restitution claims.

The Defendants' contention that the transfers were made in satisfaction of restitution claims also runs entirely contrary to the alleged facts.  The complaint alleges that the transfers to the Defendants were made as part of the Series E preferred equity redemption.  The complaint contains no allegations suggesting that PPBE paid the Defendants in order to satisfy or avoid potential restitution claims.  The Defendants' characterization of the transfers is not supported by the alleged facts.

The allegations of insolvency also negate the Defendants conclusion that the complaint shows they accepted payments without knowledge of the transfers' voidability.  The Defendants were equity investors in a struggling business.  Even if the Court looks past the Trustee's allegations regarding the Platinum scheme, the complaint alleges that Black Elk's business was significantly and publicly harmed by a deadly rig accident and unfavorable market conditions. Under those conditions, a junior interest-holder receiving a full stock redemption, ahead of $150,000,000.00 of outstanding Senior Notes, might suspect impropriety.  To prove that the Defendants have a § 550(b)(1) defense, the factual allegations in the complaint must show that the Defendants lacked knowledge of the transfers' voidability.  The allegations in the complaint, taken as true, suggest the opposite.

c. *Punitive Damages and Attorneys' Fees*

The complaint seeks punitive damages and attorneys' fees from the Defendants. The Trustee acknowledges that punitive damages are not available under § 550, but claims that punitive damages may be recovered under TUFTA. *Galaz v. Galaz (In re Galaz)*, 850 F.3d 800, 806 (5th Cir. 2017). To recover punitive damages under Texas law, "a plaintiff must prove by clear and convincing evidence that the harm with respect to which the plaintiff seeks recovery of exemplary damages resulted from fraud, malice, or gross negligence by that defendant." *Hill v. Orio (In re Juliet Homes)*, 2010 WL 5256806, at *25 (Bankr. S.D. Tex. Dec. 16, 2010) (citing Tex. Civ. Prac. & Rem. Code § 41.003).

The allegations in the complaint, taken as true, cannot entitle the Trustee to an award of punitive damages. There are no allegations that any Defendant acted with malice towards Black Elk. Likewise, no allegations suggest that a Defendant owed a duty to Black Elk, or that a Defendant acted with gross negligence.

This leaves fraud as the only possible avenue for the Trustee to recover punitive damages. However, the complaint does not allege that any of these Defendants actively participated in the Platinum scheme. At best, the complaint indicates that these Defendants knew or should have known about the scheme. Taking no action to prevent fraud "is not enough to state a plausible claim of entitlement to punitive damages." *Id.*

The Trustee also seeks an award of attorneys' fees. TUFTA states that "[i]n any proceeding under this chapter, the court may award costs and reasonable attorney's fees as are equitable and just." Tex. Bus. & Comm. Code § 24.013. "This provision of TUFTA gives the trial court the sound discretion to award attorney's fees based on the evidence the trial court heard." *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex. App.—Dallas 2007). Any award of attorneys' fees must be

reasonable and necessary, as well as equitable and just.  *Janvey v. Romero*, 2015 WL 11017950, at *1 (N.D. Tex. Sept. 22, 2015).  The Court may consider factors including whether the case involved egregious conduct, whether a fee award accomplishes the goals of TUFTA, and "evidence of bad faith, vexation, wantonness, oppression, or harassment relating to the filing or the maintenance of this action."  *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 393 (5th Cir. 2017).

Attorneys' fees are awarded based on equitable and just considerations.  Unlike punitive damages, which require malice, gross negligence, or fraud, the standard for attorneys' fees is far more flexible.  Conduct prior to the complaint, as well as litigation conduct may be considered. To be clear, the Court does not suggest that the Defendants' have engaged in any litigation conduct that would support an award of attorneys' fees to the Trustee.  However, because attorneys' fees may be awarded based on the evidence heard at trial or conduct relating to the maintenance of an action, the Court will not preclude an award of attorneys' fees at the motion to dismiss stage.

A brief word of caution.  If the Trustee prevails on all of his allegations, then the Defendants are presently retaining funds that they should never have received.  Unlike a simple preference defendant, equity might then favor an award of attorneys' fees against a party knowingly retaining the funds.  Conversely, if the Defendants are presently retaining funds with bona fide cause, an award of attorneys' fees would be far less likely.  Because the facts must develop before a determination can be made, dismissal is not appropriate.

## CONCLUSION

A separate order will be entered.

SIGNED 02/01/2021

Marvin Isgur
United States Bankruptcy Judge